[L. A. No. 8464. In Bank.—May 14, 1925.]

## CITY OF SIGNAL HILL, Petitioner, v. COUNTY OF LOS ANGELES et al., Respondents.

[1] MUNICIPAL CORPORATIONS—NEWLY INCORPORATED TERRITORY—HIGH-WAY TAXES—DIVISION OF—SECTION 2656, POLITICAL CODE.—The sole purpose of section 2656 of the Political Code, as passed in 1907, was to render available to newly incorporated territory, whether as a new city or as newly annexed to an existing city, all highway taxes unexpended or levied and in course of collection and derived from property and persons located within the territory comprising the new city or the newly annexed territory, to the end that such highway tax moneys may be expendable for the benefit of the territory from which the same was levied and collected. When the section is complied with the said tax moneys would be expended on the authority of the municipal corporation having jurisdiction over the newly incorporated territory. In the absence of such provision for payment to the city or of compliance with such provision no disbursement of said moneys for highway purposes in the territory from which the same was collected could take place.

[2] STATUTORY CONSTRUCTION—AMBIGUITIES—ACCOMPLISHMENT OF OB-JECTS.—If the terms of a statute be ambiguous or doubtful or susceptible of different constructions or interpretations, such liber-

---

2.  See 23 Cal. Jur. 722, 764, 797; 25 R. C. L. 1013.

ality of construction is justified as within a fair interpretation of its language will accomplish its apparent objects and purposes.

[3] MUNICIPAL CORPORATIONS—HIGHWAY TAXES—GENERAL ROAD FUND —CONSTRUCTION OF SECTION 2656, POLITICAL CODE.—The use of the words "general road fund" in section 2656 of the Political Code, as adopted in 1907, was not intended as referring to the technical "general road fund" authorized by section 2651 of said code, which might or might not exist at the option of boards of supervisors, but rather in the sense of general road "funds" or general road "taxes."

[4] ID.—LEGISLATIVE QUESTION—JUDICIAL QUESTION.—The questions of whether or not and how much of road tax moneys is to be paid to a new city by the county is a political question to be decided in the first instance by the legislature, but when the legislature has acted, the question whether it has accomplished the intended purpose by the particular phraseology employed is a judicial question.

[5] ID.—ROAD FUND—DIVISION OF—DUTY OF SUPERVISORS.—It is the duty of the supervisors of a county in which a new municipality has been formed to ascertain without delay the amount of general road tax moneys derived from the property and persons in the territory embraced within the municipality and unexpended at the time of its incorporation, and the amount of highway taxes then levied and in course of collection and so derived, and to pay the same to the proper officer of the municipality as soon as practicable.

(1) 28 Cyc., p. 230, n. 20.    (2) 36 Cyc., p. 1111, n. 58.    (3) 28 Cyc., p. 230, n. 20.    (4) 12 C. J., p. 872, n. 72, p. 882, n. 66. (5) 28 Cyc., p. 230, n. 20.

APPLICATION for a Writ of Mandate to require the Board of Supervisors of a county to pay to a newly incorporated municipality certain highway tax money. Writ granted.

The facts are stated in the opinion of the court.

Don G. Bowker, City Attorney, Signal Hill, and Clark & Bowker for Petitioner.

Edward T. Bishop, County Counsel, for Respondent.

Paul G. McIver, City Attorney, Montebello, and Hunsaker, Britt & Cosgrove, *Amici Curiae.*

SHENK, J.—This is an application for a writ of mandate to compel the respondents to pay to the petitioner certain tax moneys collected and in the course of collection for county highway purposes. Upon the return of the alternative writ the matter was submitted on a demurrer to the petition for want of sufficient facts. The proceeding involves the scope and effect of section 2656 of the Political Code added as a new section in 1907 (Stats. 1907, p. 63). The enactment is entitled "An Act to add a new section to the Political Code, to be numbered twenty-six hundred fifty-six, and relating to the division of general road funds upon the incorporation of municipalities, or annexation to municipalities." The section reads as follows:

"Whenever any territory is included in a city, or incorporated town, or city and county, either at the original incorporation of such city, incorporated town or city and county, or by annexation thereto subsequently, and such territory shall have constituted a road district, or a part of a road district, it shall be the duty of the county board of supervisors, as soon as practicable after such incorporation or annexation, to ascertain how much of the unexpended moneys in the general road fund or of the highway taxes of all kinds then levied and in the course of collection, is derived from property situate or persons residing in such territory; and they shall cause the amount so ascertained to be paid to the proper officers of such city, incorporated town, or city and county, as soon as practicable after it shall have come into the general road fund. The sum or sums so paid over to such city, incorporated town, or city and county, shall become part of the general fund of such city, incorporated town, or city and county."

The petition alleges that the city of Signal Hill is a municipal corporation duly incorporated as such on the seventh day of April, 1924, and situated within the county of Los Angeles; that the respondents are the county of Los Angeles, a body politic and corporate, and the board of supervisors of said county; that the territory included within the corporate limits of the petitioner at the time of its incorporation constituted a part of a road district within the county of Los Angeles; that all property within the territorial limits of the petitioner was duly assessed for

highway purposes and highway taxes were regularly levied and collected thereon and were in course of collection at the time of the incorporation of the petitioner; that on the twenty-sixth day of May, 1924, the respondents "ascertained and determined that the amount of unexpended moneys of the highway taxes of all kinds levied for the fiscal year 1923–1924 and in the course of collection, was the sum of $18,998.75, which is derived from the property situate in said territory embraced within the territorial limits of said city of Signal Hill"; that for the fiscal year 1923–24 no general road fund as provided for by section 2651 of the Political Code was established by the respondents and that respondents contend that not having established such general road fund for said year they are not required to pay petitioner any sum whatsoever under the provisions of said section 2656; that prior to the commencement of this proceeding demand was made upon respondents to pay or to take the steps necessary to provide for the payment to the treasurer of the petitioner the said sum of $18,998.75 so ascertained, but that the respondents have refused to comply with the demand.

The principal contention of the respondents is that the words "general road fund" used in section 2656 refer to the general road fund provided for in section 2651 of the Political Code, and that as the respondents did not establish a general road fund for the fiscal year 1923–24, and as there is no such fund in existence, the respondents are relieved of all duty to comply with said section 2656 and that a peremptory writ must be denied. Said section 2651 provides in part as follows: "The board of supervisors may, at the meeting at which they are required to levy the property tax for road purposes, establish a general road fund and order to be apportioned thereto an amount not exceeding thirty-five per centum of the aggregate road tax collected from all sources." Secondarily, it is contended by respondents that under the language of section 2651 it is optional with the board of supervisors to create a general road fund. As to this contention the petitioner replies that if the creation of such a fund be necessary to enable the respondents to comply with section 2656 the provision for the establishment of such fund is mandatory. But in view of our conclusion as to the intent and effect of section 2656 it is unnecessary

to determine that question. For the purposes of this proceeding it will be assumed that the establishment of a general road fund pursuant to section 2651 is optional with the board of supervisors.

[1] Even a casual reading of section 2656 impels the conclusion that the sole purpose of the enactment was to render available to newly incorporated territory, whether as a new city, or as newly annexed to an existing city, all highway taxes unexpended or levied and in course of collection and derived from property and persons located within the territory comprising the new city or the newly annexed territory, to the end that such highway tax moneys may be expendable for the benefit of the territory from which the same was levied and collected. When the section is complied with the said tax moneys would be expended on the authority of the municipal corporation having jurisdiction over the newly incorporated territory. In the absence of such provision for payment to the city or of compliance with such provision no disbursement of said moneys for highway purposes in the territory from which the same was collected could take place. (See Pol. Code, secs. 2639, 2641; *Miller* v. *Kern County,* 137 Cal. 516 [70 Pac. 549].)

It was the obvious intention of the legislature that the newly created municipality should be entitled to and should have paid to its proper officers without unnecessary delay the tax moneys described in the section. The statute is plain on that subject. The uncertainty or ambiguity suggested arises by reason of the reference to the "general road fund," which admittedly is an authorized particular and technical fund, but not in existence in the fiscal plan and policy of the respondent county. But it seems clear that the main and only purpose of the act should not be frustrated and set at naught by any application of the words "general road fund" which would entirely defeat its purpose if a construction may be placed thereon which is reasonable and would result in the effective operation of the section. By the requirements of the code of which section 2656 is now a part we are directed to apply to that section a liberal construction with a view to giving effect to its plain purpose and intent (Pol. Code, secs. 4, 326).

"It is indispensable to a correct understanding of a statute to inquire first what is the subject of it, what object is intended to be accomplished by it. When the subject matter is once clearly ascertained and its general intent, a key is found to all its intricacies—general words may be restrained to it, and those of narrower import may be expanded to embrace it to effectuate that intent. When the intention can be collected from the statute, words may be modified, altered or supplied so as to obviate any repugnancy or inconsistency with such intention. . . . Words or clauses may. be enlarged or restricted to effectuate the intention or to harmonize them with other expressed provisions. . . . The particular inquiry is not what is the abstract force of the words or what they may comprehend, but in what sense they were intended to be used as they are found in the act. The sense in which they were intended to be used furnishes the rule of interpretation, and this is to be collected from the context; and a narrower or more extended meaning is to be given according to the intention thus indicated." (2 Lewis' Sutherland on Statutory Construction, secs. 347, 376.) As was said by this court in *In re Reineger*, 184 Cal. 103 [193 Pac. 81]: "A statute should always be so construed, if reasonably possible, as to give each part thereof the meaning and effect which, from the act as a whole, appears to have been intended. A narrow or restricted meaning should not be given to a word, if it would result in an invasion of the evident purpose of the act, when a permissible, but broader, meaning would prevent the invasion and carry out that purpose." (See, also, *Barber* v. *Galloway,* 195 Cal. 1 [231 Pac. 34].)

[2] It is well settled that if the terms of a statute be ambiguous or doubtful or susceptible of different constructions or interpretations, such liberality of construction is justified as within a fair interpretation of its language will accomplish its apparent objects and purposes (*Felton* v. *West,* 102 Cal. 266 [36 Pac. 676]).

[3] When the terms of section 2656 are considered in the light of the foregoing rules it must be concluded that the use of the words "general road fund" was not intended as referring to the technical "general road fund" authorized by section 2651, which might or might not exist at the option of boards of supervisors, but rather in the sense

of general road "funds" or general road "taxes." The title of the act adding the new section and above quoted would also seem to so indicate, for it declares that said section relates to the division of general road *funds* upon the incorporation of municipalities. It cannot be assumed that the legislature intended that newly incorporated cities in counties wherein the board of supervisors might perchance have created a general road fund, as contemplated by section 2651, should be entitled to the tax moneys described in the new section and that new cities in those counties where no such fund was created should be denied them. Such an absurd result cannot be held to have been contemplated by the legislature. It was never intended that a board of supervisors should have the power to deny to a newly organized municipality the funds described in section 2656 by merely failing to create a general road fund.

The respondents admit that the territory embraced within the corporate limits of the petitioner was a portion of a county road district and that they have ascertained and determined the amount of unexpended moneys of highway taxes of all kinds levied for the fiscal year in question and in course of collection. They must also concede that the said moneys are entirely within their control and that payment thereof on their order may be made. But they say in effect to the petitioner: "The money which you claim to be entitled to is on hand or in course of collection and within our power to disburse but you are not entitled to the payment thereof because we have not exercised our option to create a general road fund as authorized by section 2651." They might also say: "If we should create a general road fund the amount of taxes for road purposes to be apportioned to said fund is entirely optional with us so long as said amount does not exceed thirty-five per cent of the aggregate road taxes to be collected from all sources. In the exercise of our discretion we will apportion to said fund a small fraction of one per cent of said revenues." Notwithstanding the mandate of the statute the respondents could thus entirely defeat the purpose of the law by failing and refusing to establish a general road fund or by establishing such fund and reducing the moneys payable to the fund to a negligible quantity. [4] True, as respondents contend, the questions of whether or

not and how much of said tax moneys is to be paid to a new city is a political question to be decided in the first instance by the legislature. But when the legislature has acted, the question whether it has accomplished the intended purpose by the particular phraseology employed is a judicial question. [5] In the determination of that question as applied to the present case, we find no difficulty in concluding that it was, and is, the duty of the respondents to ascertain without delay the amount of general road tax moneys derived from the property and persons in the territory in question and unexpended at the time of the incorporation of the new city, and the amount of highway taxes then levied and in course of collection and so derived and to pay the same to the proper officer of the petitioner as soon as practicable. The respondents do not question the correctness of the amount alleged in the petition to have been ascertained by them. They simply take the position that under the law and the facts above set forth, they are not required to make any payment whatsoever. They cannot be justified in their refusal to comply with the statute.

Let a peremptory writ issue, requiring the respondents to ascertain and pay to the treasurer, or other proper officer of the petitioner, the amount of unexpended highway tax moneys under their control on April 7, 1924, derived from property situate and persons residing in the territory of the petitioner, and also to ascertain and pay to the petitioner the amount of highway tax moneys of all kinds levied for the fiscal year 1923-24, and collected or to be collected since April 7, 1924, and likewise derived, such amounts to be ascertained without delay and such payments to be made as soon as practicable after the amounts thereof are ascertained.

Seawell, J., Richards, J., Lennon, J., Waste, J., Hart, J., *pro tem.*, and Lawlor, Acting C. J., concurred.