[Sac. No. 5407. In Bank.—February 7, 1941.]

BODINSON MANUFACTURING COMPANY (a Corporation), Petitioner, v. CALIFORNIA EMPLOYMENT COMMISSION et al., Respondents; FRANK H. CAILTEAUX et al., Co-respondents.

J. M. Mannon, Jr., Edwin S. Pillsbury, George O. Bahrs and McCutchen, Olney, Mannon & Greene for Petitioners.

Horton & Horton, Joseph K. Horton, as *Amici Curiae,* on behalf of Petitioners.

Earl Warren, Attorney-General, John J. Dailey, Deputy Attorney-General, Maurice P. McCaffrey and Glenn V. Walls for Respondents.

Robert W. Kenny and Morris E. Cohn for Co-respondents.

Milton Marks, as *Amicus Curiae,* on behalf of Respondents.

Brobeck, Phleger & Harrison, as *Amici Curiae,* on behalf of Petitioners.

GIBSON, C. J.—Petitioner sought a writ of *mandamus* in the District Court of Appeal, Third District, to compel the respondent Commission to set aside its decision awarding unemployment compensation to two of the co-respondents, to compel it to deny such compensation to the other co-respondents, and to compel it to correct petitioner's merit rating under the Unemployment Insurance Act. (Stats. 1935, chap. 352, as amended; Deering's Gen. Laws, 1939 Supp., Act 8780d.) The writ issued as prayed. Thereafter a petition by respondents and co-respondents for hearing in this court was granted.

There is no conflict as to the material facts. The California Employment Commission is charged by law with the administration of the Unemployment Insurance Act. The petitioner, Bodinson Manufacturing Company, is an employer subject to the terms of the act, and both the company and its employees have contributed as required by law to the fund from which benefit payments are made from time to time to unemployed workers pursuant to the provisions of the statute. The five named co-respondents are machinists who, for some time prior to May 24, 1939, had been employed by petitioner at its plant in San Francisco.

On the morning of May 24, 1939, a strike was called by certain of the petitioner's employees who were members of the Welders Union, Local 1330. The co-respondent machinists were not members of the Welders Union, Local 1330, and did not go on strike against petitioner, but from May 24, 1939, to July 10, 1939, co-respondents were unemployed solely because they refused to pass through the picket line which the striking welders had established around petitioner's plant. Co-respondents applied for unemployment benefit payments

and an initial determination was made under section 67 of the act, denying their application. Two of the employees, Cailteaux and Harvey, appealed as permitted by section 67, and the decision was reversed as to them by the referee. The petitioner, Bodinson Manufacturing Company, thereupon appealed to the full commission (see sec. 72), which rendered its decision holding that the two employees were entitled to unemployment compensation under the act, and further indicated that it would award benefits to all others similarly situated. Having exhausted its remedies under the act (see *Abelleira* v. *District Court of Appeal, ante,* p. 280 [109 Pac. (2d) 942], this day decided), petitioner sought this writ of mandate on the theory that the commission's order was in violation of the provisions of the Unemployment Insurance Act.

Petitioner contends that the statute, properly interpreted, makes co-respondents ineligible to receive benefit payments. The applicable provision is section 56, reading as follows: "An individual is not eligible for benefits for unemployment, and no such benefit shall be payable to him under any of the following conditions: (a) If he left his work because of a trade dispute and for the period during which he continues out of work by reason of the fact that the trade dispute is still in active progress in the establishment in which he was employed." The respondent commission and the co-respondent machinists contend that this clause was intended to disqualify only those workers who voluntarily leave their work because of a trade dispute, and that co-respondents did not leave their work voluntarily. They further assert that the petitioner is not a proper party to raise the question by this proceeding in *mandamus.*

The main issue is one of statutory interpretation. It is necessary to determine the meaning of the legislative declaration that a workman is disqualified if he left his work because of a trade dispute. The fundamental rights of organized labor are not involved in this controversy. No one has challenged the right of labor to strike or to maintain picket lines for the purposes sanctioned by law. (Cf. *McKay* v. *Retail Automobile Salesmen's Local Union No. 1067,* 16 Cal. (2d) 311 [106 Pac. (2d) 373]; *E. H. Renzel Co.* v. *Warehousemen's Union I. L. A. 38–44,* 16 Cal. (2d) 369 [106 Pac. (2d) 1]; *C. S. Smith Metropolitan Market Co., Ltd.,* v. *Lyons,* 16 Cal. (2d) 389 [106 Pac. (2d) 414]; *Shafer* v. *Registered Pharma-*

*cists Union Local 1172,* 16 Cal. (2d) 379 [106 Pac. (2d) 403] ; *Lund* v. *Auto Mechanics Union No. 1414,* 16 Cal. (2d) 374 [106 Pac. (2d) 408].)

It is not the province of this court to consider the arguments of social policy which have been urged upon it by each side; these are matters which must be, and no doubt were, addressed to the legislature. We have no authority to question the wisdom or unwisdom of the scheme set up by the statute, and we cannot deliberate upon the social desirability of making benefit payments to groups which are excluded by the statute. The conditions under which benefits are to be paid have been provided by the legislature. Thus, the sole question is whether the five employees in the present case meet the conditions which the statute prescribes.

The statute does not provide its own procedure for testing whether a particular decision of the commission awarding benefits is consistent with the authority delegated to the commission under the act. The only express provision for court review is made by section 45.10, which permits an employer to contest the legality of the contribution sought to be enforced against him by paying it under protest and then suing to recover the amount so paid. It does not follow from this, however, that the courts are without power to review a decision awarding unemployment benefits when it is alleged that the commission has violated the plain provisions of the statute under which it functions.

The question presented is one of *law.* We are not concerned here with the degree of finality which the legislature may have intended to confer upon the commission's determinations of *fact.* The failure of the legislative body to provide a specific means of judicial review might well be held to indicate an intention that the commission's decisions were to be final in so far as the legislature could make them final. Respondents would have us deduce from this, however, that the legislature intended decisions awarding benefits to be final, not only as to findings of fact, but also on matters of statutory interpretation and other questions of law. We recognize, of course, that an administrative agency charged with carrying out a particular statute must adopt some preliminary construction of the statute as a basis upon which to proceed. It is likewise true that the administrative interpretation of a statute will be accorded great respect by the courts and will be followed if not clearly erroneous. (*People* v.

*Southern Pacific Co.*, 209 Cal. 578, 594, 595 [290 Pac. 25] ; *Riley* v. *Thompson*, 193 Cal. 773, 778 [227 Pac. 772] ; *Colonial Mut. C. Ins. Co., Ltd.*, v. *Mitchell*, 140 Cal. App. 651, 657 [36 Pac. (2d) 127] ; 23 Cal. Jur. 776. See, also, *United States* v. *Philbrick*, 120 U. S. 52, 59 [7 Sup. Ct. 413, 30 L. Ed. 559] ; *McCaughn* v. *Hershey Chocolate Co.*, 283 U. S. 488 [51 Sup. Ct. 510, 75 L. Ed. 1183] ; 40 Harv. L. Rev. 469.) But such a tentative administrative interpretation makes no pretense at finality and it is the duty of this court, when such a question of law is properly presented, to state the true meaning of the statute finally and conclusively, even though this requires the overthrow of an earlier erroneous administrative construction. (*Riley* v. *Forbes*, 193 Cal. 740, 745 [227 Pac. 768] ; *Hodge* v. *McCall*, 185 Cal. 330, 334 [197 Pac. 86] ; 23 Cal. Jur. 776 ; see *Federal Trade Com.* v. *Gratz*, 253 U. S. 421, 427 [40 Sup. Ct. 572, 64 L. Ed. 993] ; *United States* v. *Dickson*, 40 U. S. [15 Pet.] 141, 161, 162 [10 L. Ed. 689] ; *Houghton* v. *Payne*, 194 U. S. 88, 99, 100 [24 Sup. Ct. 590, 48 L. Ed. 888] ; *Koshland* v. *Helvering*, 298 U. S. 441 [56 Sup. Ct. 767, 80 L. Ed. 1268, 105 A. L. R. 756] ; *Iselin* v. *United States*, 270 U. S. 245 [46 Sup. Ct. 248, 70 L. Ed. 566] ; 59 C. J. 1028 ; 29 Mich. L. Rev. 840, 844 ; Landis, Administrative Process [1938], pp. 150–152 ; Blachly & Oatman, Administrative Legislation & Adjudication [1934], p. 184.) ▌ The ultimate interpretation of a statute is an exercise of the judicial power. (Code Civ. Proc., sec. 2102 ; *Sierra Co.* v. *Nevada Co.*, 155 Cal. 1, 14 [99 Pac. 371] ; *Signal Hill* v. *County of Los Angeles*, 196 Cal. 161 [236 Pac. 304] ; 23 Cal. Jur. 719. Also, *Federal Trade Com.* v. *Gratz, supra* ; *Dismuke* v. *United States*, 297 U. S. 167, 172, 173 [56 Sup. Ct. 400, 80 L. Ed. 561] ; 59 C. J. 944, sec. 564.) ▌ The judicial power is conferred upon the courts by the Constitution and, in the absence of a constitutional provision, cannot be exercised by any other body. (Cal. Const., art. VI, sec. 1 ; *Western Metal Supply Co.* v. *Pillsbury*, 172 Cal. 407, 413 [156 Pac. 491, Ann. Cas. 1917E, 390] ; *Standard Oil Co.* v. *State Board of Equalization*, 6 Cal. (2d) 557 [59 Pac. (2d) 119] ; cf. *Agricultural Prorate Com.* v. *Superior Court*, 5 Cal. (2d) 550, 571 [55 Pac. (2d) 495] ; *Globe Cotton Oil Mills* v. *Zellerbach*, 200 Cal. 276, 277 [252 Pac. 1038] ; 5 Cal. Jur. 683.) ▌ Thus, if it were held that the statute was intended to vest final authority in the California Employment Commission to pass upon questions of law, the act would clearly be uncon-

stitutional. Any such construction is to be avoided if possible. (*People* v. *Southern Pacific Co., supra,* at p. 594; *County of Los Angeles* v. *Legg,* 5 Cal. (2d) 349, 353 [55 Pac. (2d) 206] ; *County of Los Angeles* v. *Riley,* 6 Cal. (2d) 625, 629 [59 Pac. (2d) 139] ; 6 Cal. Jur. 615.) Furthermore, the finality of decision which is contended for by co-respondents in this case where the particular decision happens to be favorable to them might, in a future case, operate to prevent a workman whose just claim was denied by the commission from applying to the courts for redress. Thus, despite procedural omissions in statutes creating administrative agencies, this court must, under well settled principles, continue to exercise its constitutional authority to render final decisions on questions of law which are properly raised in connection with the acts of such agencies.

We are therefore required, for the first time, to construe the disqualification clause of the Unemployment Insurance Act which makes a workman ineligible for benefits if he has "left his work because of a trade dispute". It is a question upon which no authority exists in this state. Respondents contend that the language of the California statute, which says "left his work", implies that the laborer is disqualified for unemployment benefits only if he leaves his work *voluntarily.* (See Fierst & Spector, "Unemployment Compensation in Labor Disputes" (1940), 49 Yale L. J. 461, 462.) Reasoning from this premise, respondents contend that the co-respondent machinists in this case did not leave their work voluntarily, but were prevented from going there by reason of the picket line of the striking welders. It is argued that if they did not leave voluntarily, the disqualification clause does not apply, and that benefits should be paid to them.

The weakness of this argument is not in the underlying premise upon which respondents rely, but in its application to the present case based upon the assumption that the employees who refused to pass the picket line did not act of their own volition. It is true that under the proper construction of the statute an employee who is prevented from working through no act of his own is entitled to compensation as, for example, where he is barred by force from the premises where he has been working. But that is not the situation here. If the picket line was maintained within the limits permitted by law, as this one presumably was, no physical compulsion was exerted to prevent co-respondents from working. They were

unemployed solely because, in accordance with their union principles, they did not choose to work in a plant where certain of their fellow employees were on strike. Their own consciences and faith in their union principles dictated their action. This choice is one which members of organized labor are frequently called upon to make, and in the eyes of the law this kind of choice has never been deemed involuntary. This very point was considered by us in a recent case dealing with the right of labor unions to picket, wherein the employer sought an injunction on the ground that the picket line operated as an unlawful *compulsion* upon other union men. We said " . . . it is obviously untrue that when truck drivers employed by other firms refuse to go through the picket line, they do so involuntarily. Such refusal is undoubtedly based upon the freely adopted rules of the local union to which they belong." (*C. S. Smith Metropolitan Market Co., Ltd.*, v. *Lyons*, 16 Cal. (2d) 389, 395 [106 Pac. (2d) 414].)

In brief, disqualification under the act depends upon the fact of voluntary action, and not the motives which led to it. The legislature did not seek to interfere with union principles or practices. The act merely sets up certain conditions as a prerequisite to the right to receive compensation, and declares that in certain situations the worker shall be ineligible to receive compensation. Fairly interpreted, it was intended to disqualify those workers who voluntarily leave their work because of a trade dispute. Co-respondents in this proceeding in fact "left their work because of a trade dispute" and are consequently ineligible to receive benefit payments. It follows that the commission's decision was erroneous as a matter of law and should be annulled. Respondents have raised two further issues of a procedural nature.

It is contended that the right to receive benefits cannot properly be raised by this proceeding in *mandamus*, and, in any event, that the employer is not a proper person to challenge a decision awarding benefits under the act. In our opinion neither contention is sound.

██ The writ of *mandamus* is provided for in the Code of Civil Procedure, sections 1084–1097. It may be sought by a "party beneficially interested" (sec. 1086) against "an inferior tribunal, corporation, board or person, to compel the performance of an act which the law specially enjoins." (Sec. 1085.) Historically the writ has been used for far narrower purposes than those for which it is used in this state

today. *Mandamus* has traditionally been merely a proceeding to compel the performance of ministerial duties and has not been widely used as a method for reviewing the decisions of administrative agencies. (*United States ex rel. McLennan* v. *Wilbur*, 283 U. S. 414 [51 Sup. Ct. 502, 75 L. Ed. 1148]; *United States ex rel. Riverside Oil Co.* v. *Hitchcock*, 190 U. S. 316 [23 Sup. Ct. 698, 47 L. Ed. 1074]; Cousens, ''Legal Doubt or Determination as a Ground for Refusing Mandamus'' [1936], 24 Georgetown L. Jour. 269, 272; 78 U. of Pa. L. Rev. [1930], 407.) In jurisdictions where other means exist for reviewing the acts and decisions of administrative bodies, either by specific statutory procedure or by writ of *certiorari*, there has been no necessity for enlarging the writ of *mandamus* beyond its conventional sphere. In this state, however, the law is now established that *mandamus* is the remedial writ which will be used to correct those acts and decisions of administrative agencies which are in violation of law, where no other adequate remedy is provided. (*Drummey* v. *State Board*, 13 Cal. (2d) 75, 82 [87 Pac. (2d) 848]; *McDonough* v. *Goodcell*, 13 Cal. (2d) 741 [91 Pac. (2d) 1035, 123 A. L. R. 1205]; *Whitten* v. *California State Board*, 8 Cal. (2d) 444, 447 [65 Pac. (2d) 1296, 115 A. L. R. 1]; cf. 16 Cal. Jur. 765, 823; 27 Cal. L. Rev. [1939], 738.) Our late decisions have recognized that the use of *mandamus* to review acts of administrative agencies is a departure from the traditional purpose of the writ, and that many historical theories concerning *mandamus* (as, for example, the technicalities of the rule that discretion in the inferior officer will bar the issuance of the writ) will not always be applicable where the writ is used to review the acts of administrative bodies. (*Drummey* v. *State Board of Funeral Directors*, *supra*, p. 84; *McDonough* v. *Goodcell*, *supra*, p. 752.) Thus, the writ has been used not only to compel administrative action which was refused in violation of law (*Wahl* v. *Waters*, 11 Cal. (2d) 81 [77 Pac. (2d) 1072]; *Anglo Calif. National Bank* v. *Leland*, 9 Cal. (2d) 347 [70 Pac. (2d) 937]; *Peters* v. *Sacramento City Employees Retirement System*, 27 Cal. App. (2d) 10 [80 Pac. (2d) 179]; *Hartsock* v. *Merritt*, 94 Cal. App. 431 [271 Pac. 381]), but also to annul or restrain administrative action already taken which is in violation of law. (*Drummey* v. *State Board*, *supra*; *Clancy* v. *Stockburger*, 10 Cal. (2d) 651 [76 Pac. (2d) 678]; *Rodgers* v. *Board of Pub. Works*, 208 Cal. 291 [281

Pac. 64] ; *Inglin* v. *Hoppin,* 156 Cal. 483 [105 Pac. 582] ; *Lotts* v. *Board of Park Commrs.,* 13 Cal. App. (2d) 625 [57 Pac. (2d) 215].)  The writ of *mandamus* may therefore be used in this state, not only to compel the performance of a ministerial act, but also in a proper case for the purpose of review- ing the final acts and decisions of statewide administrative agencies which do not exercise judicial power.  That being so, *mandamus* was the proper proceeding to bring in the present instance.

It is finally contended that the employer is not a proper party to challenge the decision of the commission awarding benefits under the act.  In providing for *mandamus* proceedings the Code of Civil Procedure, section 1086, re- quires only that the petitioner be a party "beneficially in- terested."  The act provides in section 67 that "any em- ployer whose reserve account may be affected by the payment of benefits to any individual formerly in his employ *may be- come an interested party* to any proceeding under this Article. . . . "  It is conceded that the petitioner took the required steps to become an interested party under the statute in the present case and, indeed, was the moving party in appealing to the full commission from the decision awarding benefits to the co-respondents.  We are aware of no authority which holds that a person permitted by statute to participate as an interested party in the administrative hearings and to take appeals at the administrative level is, nevertheless, without a sufficient interest in the result to test the legality of the final decision before a court of law.  Indeed, it seems to us that elemental principles of justice require that parties to the ad- ministrative proceeding be permitted to retain their status as such throughout the final judicial review by a court of law, for the fundamental issues in litigation remain essentially the same.  (Cf. *L. Singer & Sons* v. *Union Pac. R. Co.,* —— U. S. —— [61 Sup. Ct. [Adv.] 254, —— L. Ed. ——], Frankfurter, J., concurring at p. 259.)  Furthermore, it seems apparent that the employer whose reserve account is affected is the only person having sufficient incentive to chal- lenge a decision awarding benefits.  Action by this employer provides the only procedural guarantee that the commission can be held by legal process to comply with the requirements of the statute under which it operates.

. Respondents suggest that the rules governing a taxpayer's suit to restrain a governmental agency from spending public

money should by analogy control the result here. Cases are cited to the effect that a member of the public, whose only interest in the particular administrative act is that of a general taxpayer, should not in the absence of statute be permitted to interfere with the processes of government by bringing a court proceeding against the agency. (See *Frothingham* v. *Mellon,* 262 U. S. 447 [43 Sup. Ct. 597, 67 L. Ed. 1078].) The situations are not analogous. A more accurate parallel is furnished by the various administrative agencies created in this state and elsewhere with limited powers for the purpose of dealing with particular phases of the relationship between employers and employees. Hearings before such agencies are treated as adversary proceedings in which interested parties on each side of the question are permitted to appear. This is the procedure adopted in workmen's compensation acts and labor relation statutes, and we do not think the legislature intended to depart from it in creating the California Employment Commission. The adversary parties to these proceedings are entitled to such appeals as are permitted under the statute, and further, are entitled to appear in court to test the commission's final decision, thus insuring compliance with the requirements of the law. Our conclusion is, therefore, that the petitioner was a proper party to test the legality of the commission's decision awarding unemployment benefits by this proceeding in *mandamus.*

It would of course be highly improper for this court to substitute its opinion for that of an administrative agency on matters which were properly entrusted to the agency to decide. In the present case, however, accepting the facts exactly as found by the commission, it is clear that there was no statutory authority for the award of benefits to co-respondents, and the peremptory writ of mandate should issue to annul the award.

The demurrers are overruled and the motions to quash the alternative writ are denied. The commission is directed to disallow benefits to the co-respondents, Haydock, Almeida and Martinez and to credit to petitioner's account all benefits heretofore paid to the other co-respondents and to disregard the claims of co-respondents in determining the petitioner's merit rating under the Unemployment Insurance Act.

Edmonds, J., Traynor, J., and Peters, J., *pro tem.,* concurred.

SHENK, J., and WARD, J., *pro tem.,* Concurring.—We concur in the judgment on the ground that on the undisputed facts and the interpretation placed upon the statute the petitioner is entitled to the relief sought and granted.

A petition for a rehearing was denied March 7, 1941. Carter, J., voted for a rehearing.