[Sac. No. 5749.   In Bank.   Dec. 19, 1947.]

CALIFORNIA MOTOR TRANSPORT CO., LTD. (a Corporation), Respondent, v. STATE BOARD OF EQUALIZATION, Appellant.

Robert W. Kenny, Fred N. Howser, Attorneys General, John L. Nourse and James E. Sabine, Deputy Attorneys General, for Appellant.

Norman A. Eisner for Respondent.

SCHAUER, J.—Defendant Board of Equalization appeals from a judgment, rendered by the court sitting without a jury, in favor of plaintiff corporation in its suit to recover payments made by it under protest, of sums which had been demanded by defendant as additional taxes and interest thereon due from plaintiff for the period of October 1, 1940, to December 31, 1942, under the California Motor Vehicle Transportation License Tax Law (see Stats. 1933, p. 928, as amended, Stats. 1935, p. 2176; Deering's Gen Laws, 1937, Act 5130d), which was amended and transferred in 1941 (effective July 1, 1943) to the Revenue and Taxation Code (§§ 9601-10501). Inasmuch as the 1941 amendments did not materially alter those provisions of the law which are here involved, section numbers hereinafter cited will, unless otherwise specifically indicated, refer to the Revenue and Taxation Code.

The law provides for the licensing of operators of motor vehicles who for compensation transport persons or property

upon any public highway within the state (§ 9701), and imposes upon such operators a license tax at the rate of 3 per cent of their gross receipts from the operations included within the law (§ 9651). The tax does not apply to "operators of motor vehicles operated exclusively within incorporated cities . . . [nor] to the gross receipts derived from the transportation of . . . property wholly within incorporated cities . . . where no portion of the public highway outside the corporate limits of the cities . . . is traversed in such operation." (§ 9653.) For the reasons hereinafter stated, we have concluded that the trial court must be sustained in its determination that the taxes and interest here sought to be retained by defendant board were assessed and collected by it upon receipts which are exempt under the provisions of the section last above cited and that plaintiff is entitled to the refund decreed.

The record discloses that plaintiff is a highway common carrier as defined in sections 2¾ and 50¾ of the Public Utilities Act of California (Stats. 1915, p. 115; 2 Deering's Gen. Laws, Act 6386), and as such, operates under certificates of public convenience and necessity which restrict plaintiff's common carrier operations to the transportation of express matter of California Motor Express, Limited, a corporation (hereinafter referred to as the express company), between the latter's terminal depot located at Los Angeles and its terminal depots in San Francisco and Oakland, and which prohibit plaintiff from operating any pickup and delivery service in any of the three cities as part of its intercity operations. Plaintiff concedes that its gross receipts from the intercity operations, as distinguished from pickup and delivery service, are subject to the license tax, and no part of such receipts is here involved.

Prior to May 1, 1941, pickup and delivery service in the city of Los Angeles had been rendered to the express company by one James C. Coughlin, an individual, with equipment owned by him; and in Oakland and San Francisco, it had been rendered by Redline Transfer Company, a copartnership (hereinafter referred to as Redline), with equipment which the latter owned. On or about May 1, 1941, plaintiff purchased from Coughlin and Redline, respectively, the equipment with which they had rendered the Los Angeles and Oakland pickup and delivery services, and thereupon under a permit issued to plaintiff on April 7, 1941, by the Railroad

Commission (now the Public Utilities Commission) of California to operate as a city carrier (Stats. 1935, ch. 312), plaintiff undertook with its newly acquired equipment to furnish for the express company the same pickup and delivery service in Los Angeles and Oakland which Coughlin and Redline had theretofore performed. Redline continued to render that service in San Francisco. The taxes which defendant now seeks to uphold were assessed upon the receipts from pickup and delivery services rendered by plaintiff in Los Angeles and Oakland, and also upon a 20 per cent portion of the receipts of Redline's San Francisco service which defendant claimed was attributable to plaintiff because of occasional use by Redline, without payment therefor to plaintiff, of certain of plaintiff's equipment. However, defendant now agrees in its brief that plaintiff was entitled to judgment ordering refund of the amount paid as taxes measured by Redline receipts, and confines itself to arguing the point that "the judgment should be reversed to the extent that it gives respondent [plaintiff] a refund of taxes on the receipts from its Los Angeles and Oakland pickup and delivery business."

It is conceded that neither Coughlin nor Redline had ever paid or been required to pay taxes under the law here involved upon their receipts from any of the described pickup and delivery services. Plaintiff rendered the services under written contracts with the express company which covered only the pickup and delivery work and which were separate from the written contracts between plaintiff and the express company covering the intercity and interterminal services. Plaintiff's evidence is to the further effect, and the trial court found, that plaintiff as "a city carrier . . . had separate equipment, lighter and different than that which it employed in its capacity of highway carrier. That the vehicles used by plaintiff in said pickup and delivery service have not been and are not used in highway transportation, and have not and do not operate outside the corporate limits of Los Angeles or Oakland. It confined its business as a city carrier strictly within the limits for which it was licensed, and intruded in no particular within the field of the highway carrier. It . . . rendered separate and independent bills to California Motor Express, Ltd., for said city carrier services. The plaintiff as a highway common carrier did likewise. Its equipment never deviated from its devotion to the service for which it was licensed. It kept accounts restricted to its character as a high-

way carrier. . . . That plaintiff is both a highway carrier and a city carrier and it exists in each of these characters by separate authority. Each business [of plaintiff] has a separate license or certificate. . . . The businesses were not confused or entangled and did not overlap. The Court finds that the two operations, that of a city carrier and that of a highway carrier, are just as separate and distinct for all purposes of this case as if the two operations had been conducted by separate and distinct corporations or legal entities." The court further found that "plaintiff has at all times kept separate and distinct books and records covering said pickup and delivery service and entirely independent of books and records covering its intercity operations."

In support of its position that the assessments upon the receipts of pickup and delivery service performed by plaintiff were lawfully made, defendant relies in particular upon the case of *Bekins Van Lines, Inc.,* v. *Johnson* (1942), 21 Cal.2d 135 [130 P.2d 421]. The situation in that case, however, does not coincide with that now before us. There it was not proven and found by the court, as here, that the plaintiff conducted two separate and distinct business operations, each of which performed distinct and different services under contracts separately executed with the recipient of the services. Rather, the plaintiff there argued that before the tax rate was applied, it was entitled to deduct from its gross receipts for the hauling of goods from its customers' dwellings in one city to those in other cities an amount computed as attributable to services rendered in loading and unloading such goods between house and sidewalk, as well as amounts "separately indicated on its waybills received from pick-up and delivery service within municipalities." In its opinion this court continued (p. 139 of 21 Cal.2d), "In intercity hauls of small consignments the plaintiff found it more convenient to pick up and deliver with the use of smaller trucks between the point of pick-up or delivery and the larger truck or van which was to transport or which had transported the goods over the public highways. In other intercity hauls, the van or truck received and discharged the load directly at the door. The plaintiff contends that receipts from such separate pick-up and delivery service within municipalities in connection with intercity hauls should be excepted from assessment under the act because that service is conducted entirely within municipalities and does not employ any part of the public highways."

The trial court rendered judgment against plaintiff in its suit to recover taxes paid under protest upon the receipts which it claimed should be exempted as described above, and thereafter counsel for the respective parties waived findings of fact and conclusions of law. There was no contention that the evidence was insufficient to support any essential, implied finding. In that state of the record this court presumed, as it was bound to do and as it emphasized, "that every fact essential to the support of the judgment was proved and found by the court . . . [and] that the proof showed and that the court found and concluded that the services out of which the disputed tax arose were so much a part of the business of plaintiff, were so customarily rendered in that connection, and so directly contributed to the transportation which was the plaintiff's principal business, that money derived therefrom must be regarded as part of the 'gross receipts from operations of said operator' and taxable as such" (p. 137 of 21 Cal. 2d) and affirmed the judgment.

It is to be noted, also, that the court in its opinion in the above-cited case points out (p. 142 of 21 Cal.2d) that "receipts from intra-city business as excepted from the act [Rev. & Tax. Code, § 9653] were not included [by the Board of Equalization] in the computation of gross receipts from operation as defined by the act. Nor were charges for labor furnished for the purpose of packing and crating goods, or warehousing, included in the gross receipts subject to taxation," and that (p. 138) in its return to the board for the years in question "the plaintiff reported its gross receipts from all transportation business in the state exclusive of hauls excepted by section 14 [now § 9653] of the act," but claimed deductions therefrom as described above. It thus appears that only receipts from those services which were found to be integral parts of the single operation of moving goods from a dwelling, over the public highways, to their destination outside of the city in which the moving operation originated, were held subject to the tax. By contrast, plaintiff in the instant case is not moving the goods of its own customers in intercity operations whereof the pickup and delivery service forms an integral part of a unitary operation, but is rather, as found by the trial court, engaging in two separate and distinct businesses, severally authorized by a certificate of public convenience and necessity and by a permit to operate as a city carrier, in which it renders to an express company, which

alone deals with the general public, separate services under separate contracts and with separate and independent bills rendered therefor. Manifestly, the fact that the same goods were the subjects of both intracity and intercity transportation does not establish that as a matter of law there was but a single business operation. In truth, the plaintiff in its capacity of highway carrier was, as previously noted, prohibited from rendering pickup and delivery service in any of its terminal depot cities and, hence, could carry intercity only the identical goods which were the subject of pickup and delivery by some other operation or agency.

Defendant attacks as being without support in the evidence the finding, quoted hereinabove, that "plaintiff has at all times kept separate and distinct books and records covering said pick-up and delivery service and entirely independent of books and records covering its intercity operations." On this point plaintiff's auditor testified that the revenues from the two services are "set up separately in the accounts of the Transport Company. In other words, one under revenue derived from line haul service and the other derived from city carrier service," that the revenue accounts were not kept in physically separate books or "even separate pages; just columns on the page would indicate the line haul and the other." It is thus apparent that the evidence indicated that plaintiff kept separate and distinct records of the income from each of the two services, even though such records were not maintained in physically separate volumes, and that the two businesses were operated as separate enterprises. It is further apparent that the receipts from one of such enterprises—the pickup and delivery work which was performed entirely within incorporated cities—is expressly exempted from taxation under the Motor Vehicle Transportation License Tax Law. This court has recently reiterated that (*Edison California Stores* v. *McColgan* (1947), 30 Cal.2d 472, 476 [183 P.2d 16]) "Persons may adopt any lawful means for the lessening of the burden of taxes which in one form or another may be laid upon properties or profits. (*Pioneer Express Co.* v. *Riley*, 208 Cal. 677, 687 [284 P. 663].) It was also reiterated in that case that courts, in interpreting statutes levying taxes, may not extend their provisions, by implication, beyond the clear import of the language used, nor enlarge upon their operation so as to embrace matters not specifically included. In case of doubt, construction is to favor the taxpayer rather than

the government.'' That plaintiff's segregation of its operations may contribute to effecting a tax saving furnishes no ground for attack upon it where, as the trial court here found, ''there is no evidence of fraud or bad faith.''

■ Unless we are to hold that as a matter of law one operator who conducts both a highway common carrier business and a city carrier business cannot segregate the two operations, however separate in fact, for tax purpose, the judgment of the trial court must be sustained. We are satisfied that the true test for tax liability in this case rests in the character of the operation and fact of segregation and not in the identity of the operator.

For the reasons above stated the judgment appealed from is affirmed.

Shenk, J., Edmonds, J., and Carter, J., concurred.

TRAYNOR, J.—I dissent. Under the California Motor Vehicle Transportation License Tax Law as construed by this court, an operator of motor vehicles engaged in intercity transportation of goods must include in the taxable gross receipts from such transportation revenue derived from services incidental to the intercity transportation. This court has held that receipts from a pickup and delivery service maintained for door-to-door delivery are taxable as part of the gross receipts from intercity transportation of the goods. (*Bekins Van Lines, Inc.* v. *Johnson,* 21 Cal.2d 135 [130 P.2d 421]; *Southern California Freight Lines* v. *State Board of Equalization,* 72 Cal.App.2d 26 [163 P.2d 776].) As in those cases, the pickup and delivery service in the present case was maintained by plaintiff for door-to-door delivery of goods moved between cities, and was as much a part of the intercity transportation. The facts found by the trial court establish no substantial difference between the taxpayers' activities in those cases and the activities of plaintiff in the present case. The holding that even though others must include revenue derived from a pickup and delivery service in their taxable gross receipts, plaintiff need not, affords plaintiff an unwarranted competitive advantage over others engaged in the same activities.

The California Motor Vehicle Transportation License Tax Law (now incorporated in the Revenue and Taxation Code and hereafter cited according to the section numbers of that

code) provides: "A license tax is hereby imposed upon operators at the rate of 3 per cent of the gross receipts of the operators from operations." (§ 9651.) The term "operator" includes "any person engaging in the transportation of persons or property for hire or compensation by or upon any public highway in this State, either directly or indirectly." (§ 9603.) " 'Gross receipts' include all receipts from the operation of motor vehicles entirely within this State . . . 'Gross receipts' do not include revenue derived by an express company from the shipment of property over the lines of common carriers, but do include revenue derived by an express company from the transportation of the property in motor vehicles operated by it." (§ 9606.) The statute does not apply to "operators of motor vehicles operated within incorporated cities." (§ 9653.) It exempts "the gross receipts derived from the transportation of persons or property wholly within incorporated cities or between incorporated cities and private property or wholly on private property where no portion of the public highway outside the corporate limits of the cities is traversed in such operation." (§ 9653.)

In *Bekins Van Lines Inc.* v. *Johnson, supra,* the plaintiff was engaged in intercity transportation of household goods. It objected to including in its taxable gross receipts compensation for the moving of goods from one house or the placing of them into another before and after its transportation over intercity highways on trucks operated by plaintiff; it also objected to including in its taxable gross receipts compensation derived from an intracity pickup and delivery service maintained for the transportation of small consignments to and from its intercity terminals. In holding such compensation to be part of plaintiff's gross receipts from taxable operations, this court stated: "The plaintiff concedes that the words 'operation of motor vehicles' as used in the definition include loading and unloading activities at the sidewalk. However, the goods must be taken to and from the sidewalk as an inseparably preparatory activity connected with the loading and unloading operations. We therefore fail to see how the plaintiff can be excused from the payment of a proportion of the license tax based on its claim that more than 50 per cent of gross receipts from operations was derived from time devoted to such preparatory activities. The preparatory activities sought to be expected are

just as much part of and essential to transportation, and therefore to operation of motor vehicles, as are actual loading and unloading operations which are also preparatory to the rolling of the vehicle along the highways. To adopt the plaintiff's suggestion would be to add to the language of the definition a limitation which the Legislature did not express, and which it must be deemed it did not intend. If the Legislature intended to exclude from 'operation' as defined every incidental service and activity customary and essential in the matter of transporting goods for compensation and hire it could easily have said so. By failure to use any such limiting words the Legislature indicated its intention of not so limiting or circumscribing the meaning or scope of the act. (*In re Bush*, 6 Cal.2d 43 [56 P.2d 511].) . . . Nor may any distinction be made by the plaintiff on its returns between intercity hauls which require for convenience an intra-city pick-up and delivery service, and those which do not require such service in the convenient method of initiating or terminating such intercity transportation. . . . No invalidity may be said to attach by reason of the fact that the plaintiff here is taxed on its intra-city pick-up and delivery service in connection with its intercity hauls are distinguished from its strictly intra-city business. (*In re Bush, supra.*)'' (21 Cal.2d 135, 140-142; see, also, *Southern California Freight Lines* v. *State Board of Equalization, supra.*)

In the present case plaintiff rendered separate monthly bills to the express company for ''terminal to terminal line haul charges'' and for ''pick-up and delivery services at Los Angeles and Oakland.'' Plaintiff's bills for May, 1941, which are illustrative of plaintiff's dealings with the express company, included as freight hauled from terminal to terminal ''Northbound 5,709,572 lbs.'' and ''Southbound 6,631,411 lbs.'' The same amount of ''Northbound'' or ''Southbound'' freight was picked up or delivered by plaintiff in Los Angeles. Accordingly, there is no dispute that the same goods were moved by plaintiff in its intercity hauls and in its intracity pickup and delivery service. The latter was the first or last step of the intercity transportation of the goods moved by plaintiff for the express company.

None of the facts found by the trial court, on which the majority opinion relies, affects the decisive fact that plaintiff's intracity pickup and delivery service was incidental to the moving of the goods between cities. It is immaterial

that plaintiff used different trucks for transporting goods within city limits and for hauling them from terminal to terminal. The plaintiff in the Bekins case relied on the use of separate trucks, but this court held that the use of such trucks in operating a pickup and delivery service was simply a convenient method of starting or terminating intercity transportation. It is also immaterial that for the operation of its pickup and delivery service plaintiff secured a permit as a city carrier, and that the certificate of convenience and necessity under which it moved freight over intercity highways was limited to the carrying of freight from terminal to terminal. Receipts from activities that are part of intercity transportation of goods are taxable regardless of whether any permit is required to engage in such activities. (*In re Bush,* 6 Cal.2d 43, 51 [56 P.2d 511].) If a special permit is secured for certain activities, it does not follow that these activities are disconnected from other activities of the carrier.

The present case cannot be distinguished on the grounds that plaintiff engaged in transporting goods for the express company and not for the consignors of the goods, or that it kept separate accounts of its receipts from transporting goods between the terminals and its receipts from the intracity pick-up and delivery service. It is settled that an operator is taxable on receipts from the transportation of goods whether he rendered his services to one or several customers or whether he engaged in his activities as an agent or as an independent contractor. (*In re Bush,* 6 Cal.2d 43, 54 [56 P.2d 511].) Separate charges for the pickup and delivery service were made by the plaintiff in the Bekins case as well as by plaintiff in the present case. The fact that plaintiff entered the receipts from the hauling of goods between the terminals and from its intracity pickup and delivery service in separate accounts does not mean that the two activities were unconnected and that plaintiff operated two unrelated businesses. A carrier like any other business may keep separate accounts to ascertain the revenue obtained from its various activities. The tax applies because of the taxpayer's activities in transporting goods for hire on the public highways of the state, not because it keeps accounts in a certain way. Plaintiff's pickup and delivery service is as much an integral part of its intercity transportation of goods as such service was in the Bekins and Freight Lines cases, *supra,* and is not made less so by mere bookkeeping entries.

The present case is clearly distinguishable from *Pioneer Express Co.* v. *Riley,* 208 Cal. 677 [284 P. 663]. In that case different corporations were engaged in making intercity hauls and operating an intracity pickup and delivery service. It was contended that there was unity of control as to the two corporations, but this court declined to go behind the corporate entities. In the present case the same corporation is engaged in hauling the goods between terminals and in the intracity pick-up and delivery service.

The decision of this case depends solely upon whether plaintiff's pickup and delivery service was part of its intercity transportation service. In my opinion it was, whether or not it may be regarded as a separate business. The majority opinion, however, regards as controlling the question whether the taxpayer has so segregated its activities that the pickup and delivery service may be regarded as a separate business. Even if such a segregation were the test of taxability under the statute, the question whether the service is operated as a separate business would not present an issue for the final determination of the trial court. The problem would involve questions of both law and fact. What a taxpayer's activities are is a question of fact; whether such activities give rise to tax liability is a question of law depending on what the statute means and how it applies to the facts. (*Estate of Madison,* 26 Cal.2d 453, 456 [159 P.2d 630] ; *Bodinson Mfg. Co.* v. *California Employment Com.,* 17 Cal.2d 321, 326 [109 P.2d 935] ; *County of Sierra* v. *County of Nevada,* 155 Cal. 1, 14 [99 P. 371] ; *Signal Hill* v. *County of Los Angeles,* 196 Cal. 161, 168 [236 P. 304] ; *Mitchel* v. *Brown,* 43 Cal.App.2d 217, 222 [110 P.2d 456] ; see 23 Cal.Jur. 719 ; 10 Cal.Jur. 882.)

In this case the purposes of plaintiff in operating the pickup and delivery service, the conditions under which the service was operated, and its relation to the intercity transportation, are either undisputed or ascertainable from the findings. Even under the separate business test of the majority opinion, the taxability of the receipts from the service in question should be determined as a matter of law, and this court should hold such receipts taxable on the ground that there is no essential distinction between this case and the Bekins and Freight Lines cases where the operators maintained pick-up and delivery service for the same purposes, under essentially the same conditions, and in the same relation to their intercity transportation.

If trial courts can reach different decisions under such circumstances, and such decisions are to be final, some taxpayers may be subject to taxation but others engaged in essentially the same activities may not. The majority opinion, by leaving it to the trial courts to make final determinations whether the statute applies to given facts gives some taxpayers a competitive advantage over others, thus defeating the uniform operation of the statute throughout the state.

Gibson, C. J., and Spence, J., concurred.

Appellant's petition for a rehearing was denied January 15, 1948. Gibson, C. J., Traynor, J., and Spence, J., voted for a rehearing.