[Civ. No. 6707.  Third Dist.  Sept. 2, 1942.]

PACIFIC GREYHOUND LINES (a Corporation), Appellant, v. CHARLES G. JOHNSON, as State Treasurer, etc., Respondent.

298

H. C. Lucas and J. D. Maatta for Appellant.

Harry A. Encell, J. C. James, Russell B. James, Robert Brennan and Wm. F. Brooks, as Amici Curiae, on behalf of Appellant.

Earl Warren, Attorney General, H. H. Linney, Assistant Attorney General, and Adrian A. Kragen, Deputy Attorney General, for Respondent.

ADAMS, P. J.—Appeal from a judgment in favor of defendant as treasurer of the State of California, in an action for the recovery of license taxes paid under protest.

Plaintiff sued to recover additional taxes assessed for the month of April, 1939, under the provisions of the California Motor Vehicle Transportation License Tax Act, as enacted in 1933 (Stats. 1933, p. 928, as amended Stats. 1935, p. 2176, and as amended Stats. 1937, p. 1919; Deering's Gen. Laws, 1937, Act 5130d), and paid under protest. Judgment having been rendered for defendant, plaintiff appeals.

The act is entitled, ''An act imposing a license fee or tax for the transportation of persons or property for hire or compensation upon the public streets, roads and highways in the State of California by motor vehicle. . . .'' Section 1(a) defines the term ''operator,'' as used therein, to include ''all persons engaging in the transportation of persons or property for hire or compensation by or upon motor vehicles upon any public highway in this State, either directly or indirectly,'' with certain exceptions not pertinent here.

Section 1(d) provides:

''The term 'gross receipts' shall include all receipts from the operation of motor vehicles entirely within this State and a proportion, based upon the proportion of the mileage within this State to the entire mileage over which such operations extend, of the receipts from the operation of motor vehicles passing through, into or out of this State, or partly within and partly without this State. The term 'gross receipts' shall not include revenue derived by an express company from the shipment of property over the lines of common carriers, but shall include revenue derived by such express companies from the transportation of property in motor vehicles operated by them.''

Section 4 is as follows:

''A license tax is hereby imposed upon operators at the rate of three per cent of the gross receipts of such operators from operating on and after the first day of the month after the effective date of this act. Such tax shall be paid at the time, and in the manner hereinafter provided.''

Section 5 provides that each operator shall make a return

on or before the twentieth of each month, on such form as the State Board of Equalization may prescribe, showing "the gross receipts of the operator" for the preceding calendar month, and other information.

Section 6, which was added in 1937, provides, among other things:

"For the purpose of the proper administration of this act, and to prevent evasion of the tax hereby imposed, it shall be presumed that the gross receipts from all operations of operators are subject to the tax hereby imposed until the contrary is established."

Section 15 charges the State Board of Equalization with enforcement of the provisions of the act, and authorizes it to prescribe, adopt and enforce rules and regulations relating to its administration and enforcement.

Section 22 provides that the act shall not apply "to motor vehicles operating exclusively within incorporated cities or towns, nor shall it apply to such vehicles operating between incorporated cities or towns where no portion of the public highway outside of the corporate limits of said cities or towns is traversed in said operation, nor shall this act apply to motor vehicles operated exclusively off of public highways in this State."

It does not appear that the State Board of Equalization (hereinafter called the "board"), prescribed or adopted any rule or regulation exempting ferry fares and tolls from gross receipts subject to the tax, or defining the term "gross receipts from operations"; it did prepare and furnish to operators a sheet of instructions, and a form entitled "Transportation Tax Return." Said return, under the head of "Gross Receipts from Operations," provided for returns of, 1. Freight or property; 2. Passengers; 3. Mail and all miscellaneous items. Then followed the heading, "Allowable Deductions," under which was listed, 5. Amounts paid to licensed sub-haul operators; 6. *Ferry fares and tolls;* 7. Business all within city limits; 8. Business all on private roads; 9. Out of state portion of interstate operations; 10. Other nontaxable items; 11. Total allowable deductions (Items 5 to 10, inclusive) ; 12. Tax—Gross Receipts (Item 4, minus Item 11).

The instruction sheet, under Item 6, stated that ferry fares and bridge tolls would be allowed as an "offset against gross revenue" if proper receipts were retained for examination by the board's auditors.

On March 30, 1939, the attorney general rendered an opinion to the effect that an "operator" is not entitled to deduct from "gross receipts of operation" disbursements for bridge tolls, or ferry fares and charges. Because of this ruling, on the form furnished by the board to plaintiff for the April, 1939, return, Item 6, "Ferry Fares and Tolls" was stricken out. Plaintiff made its return for that month without deducting any amount for such ferry fares and tolls, but paid under protest the sum of $585.27, representing 3 per cent of the amount alleged to have been collected by it from its passengers to defray the cost of bridge and ferry tolls. Thereafter it began this action to recover said sum from defendant, treasurer of the state.

▉ Appellant's contentions are that "gross receipts" upon which operators are required to pay the prescribed tax under the aforesaid act, do not include ferry fares and bridge tolls; that the term "gross receipts," as used in said act, is ambiguous, and, therefore, the construction put upon it by the board charged with the duty of executing it should be given great weight by the courts; and that, as the Legislature has amended the act three times without indicating its disapproval of the administrative interpretation of the board, such interpretation and construction have been given the force and effect of law; also, that in cases of doubt tax statutes are to be construed in favor of the taxpayer rather than the state.

We are of the opinion that the provisions of the act as to what shall constitute gross receipts are not ambiguous. As stated in section 1(d), the term "gross receipts" is to include *all* receipts from the operation of motor vehicles entirely within this state, and a proportion of the receipts from interstate operations on a mileage basis. That the term does not include certain revenues derived by express companies is then stated. And that the act shall not apply to operations exclusively within incorporated towns, nor to those between incorporated cities and towns where no portion of the public highway outside of their corporate limits is traversed, nor to vehicles operated exclusively off public highways, is provided by section 22, *supra*. There is no provision that the term does not include ferry and bridge fares and tolls. A statement of exceptions excludes all others. That all receipts not specifically excluded are to be included is not only a necessary conclusion, but this conclusion is fortified by the provision of section 7, *supra*, that it shall be presumed that the

gross receipts from all operations of operators are subject to the tax until the contrary is established. "Gross" means "whole, entire, total; without deduction." (18 Words and Phrases, Perm. Ed., p. 697.) Furthermore, the term "gross receipts from operations," has been held in this state to be plain language requiring no interpretation. (*Pacific Gas & Electric Co.* v. *Roberts*, 176 Cal. 183 [167 Pac. 845].)

The Legislature presumably had in mind the decision in the Pacific Gas & Electric Company case when it enacted the statute under consideration. When it excepted operations not to be included, it further evidenced its intention that all others were to be included; and to make the meaning of gross receipts as *all* receipts doubly sure, it subsequently created the presumption referred to above. Ferry and bridge fares and tolls collected by operators are plainly a part of their gross receipts; that such operators do not act as agents for others in the collection of same was found by the trial court. Whether it is or is not equitable to require operators to pay a tax upon the amounts they are compelled to pay for ferry fares and bridge tolls is a matter for the Legislature and not the courts. No reason appears why, if the Legislature did not intend "gross receipts" to include such amounts, it should not have said so in plain terms.

Gross receipts are not the same as gross earnings, and no deductions from gross receipts are justified except such as are provided by the act itself. It specifies what shall not constitute "gross receipts," but no distinction between "gross receipts" and "taxable gross receipts" is made by the act, or justified under its terms.

The term "gross receipts from operation" as used in the statute, being unambiguous, it becomes unimportant that the board heretofore, in the enforcement thereof, may have deducted from the gross receipts, subject to tax, the portion thereof representing bridge and ferry tolls. Conceding the existence and force of the rule contended for by appellant, that where ambiguity exists, the contemporaneous construction of a statute by executive officers charged with the duty of enforcing it is entitled to great respect, such rule is not controlling. (*Hodge* v. *McCall*, 185 Cal. 330, 334 [197 Pac. 86]; *Bodinson Mfg. Co.* v. *California Emp. Com.*, 17 Cal. (2d) 321, 325, 326 [109 P. (2d) 935].)

Nor does it follow from the fact that the Legislature has amended the act without expressing disapproval of the prac-

tice of the board of excluding bridge and ferry tolls from ''gross receipts,''subject to the tax, that it has given legislative approval of such practice. ██ The presumption that a legislature, in amending or reenacting a statute, is familiar with the construction which the courts have put upon terms used therein, is well recognized; but such presumption does not necessarily apply to all constructions or practices adopted by administrative boards, and should not be too generally indulged in the absence of a showing that such construction or practice has been brought to the attention of the Legislature. (*San Francisco-Oakland Terminal Rys.* v. *County of Alameda,* 66 Cal. App. 77, 83 [225 Pac. 304]; *Dollar Savings Bank* v. *United States,* 86 U. S. 227, 237 [22 L. Ed. 80, 81, 82].)

██ The rules contended for by appellant are only aids in statutory construction of a legislative enactment which is so general in its terms as to render an interpretative rule or regulation appropriate. They are not conclusive upon the courts. (*Helvering* v. *Reynolds,* 313 U. S. 428, 432 [61 S. Ct. 971, 85 L. Ed. 1438, 1441, 134 A. L. R. 1155] : 25 R. C. L. 1046.) Also, it does not appear here that the board ever promulgated a rule or regulation construing the term ''gross receipts from operations.''

██ Exemptions from taxation are to be strictly construed against the taxpayer. (*Bay Cities Transp. Co.* v. *Johnson,* 8 Cal. (2d) 706 [68 P. (2d) 710]; *Cypress Lawn etc. Assn.* v. *San Francisco,* 211 Cal. 387, 390 [295 Pac. 813]; *Miller* v. *McColgan,* 17 Cal. (2d) 432 [110 P. (2d) 419, 134 A. L. R. 1424].) We are not impressed with the argument of appellant that amounts received by it for ferry fares and tolls are not to be considered as ''exemptions'' or ''deductions'' under the foregoing rule, but are rather ''eliminations''; that ''deductions'' are from receipts which are taxable, while ''eliminations'' are from receipts that are not taxable. It may be noted that they are designated in the Board's form of return as ''allowable deductions,'' and in its instructions, as ''offsets against gross revenue.'' But whatever designation may be applied, we are of the opinion that the rule above cited applies.

The judgment is affirmed.

Thompson, J., and Schottky, J. pro tem., concurred.

Appellant's petition for a hearing by the Supreme Court was denied October 29, 1942. Curtis, J., and Edmonds, J., voted for a hearing. Traynor, J., did not participate therein.