[Civ. No. 19982.   First Dist., Div. One.   Jan. 31, 1962.]

PETERSON TRACTOR COMPANY, Plaintiff and Respondent, v. STATE BOARD OF EQUALIZATION, Defendant and Appellant.

Stanley Mosk, Attorney General, Ernest P. Goodman and John J. Klee, Jr., Deputy Attorneys General, for Defendant and Appellant.

Fitzgerald, Abbott & Beardsley for Plaintiff and Respondent.

SULLIVAN, J.—Plaintiff Peterson Tractor Co. (hereafter referred to as Peterson) brought this action to recover sales taxes, together with interest, collected by the State Board of Equalization for the period April 1, 1955, to March 31, 1958. For convenience we will refer to the defendant as the board. The case was tried upon a written stipulation of facts with exhibits attached thereto, without the introduction of any oral or other documentary evidence. From a judgment in favor of Peterson, the board appeals.

Peterson is a Nevada corporation, qualified to do business in California, with its principal place of business in San Leandro, Alameda County. It is the Caterpillar tractor dealer in the San Francisco Bay area and northern Sacramento valley. During the periods here involved, it was a retailer within the meaning of the California Sales and Use Tax Law. Peterson purchased all of the items, the lease and sale of which are here in controversy, for resale and gave resale certificates to the vendors thereof pursuant to the Sales and Use Tax Law. It paid no use tax to the state with respect to the leasing of these items.

Many of Peterson's sales of heavy equipment were made to customers, who, at the time, were leasing the equipment to be purchased. In such situations, it was Peterson's practice to credit, as a down payment, the total amount of the rentals paid against an originally stated selling price. In addition, the lessee who indicated a desire to purchase the equipment was required to pay an amount denominated by Peterson as "interest on the deferred balance." The controversy before us arose out of such sales made after a period of leasing and is limited to the above-mentioned "interest on the deferred balance." Peterson contends that such amount was not includable in the gross receipts of the sale and therefore not subject to tax. The board contends that it is a part of the gross receipts and therefore is taxable.

In their written stipulation of facts filed with the trial court, the parties set forth a hypothetical example as the best way of demonstrating the nature of the above "interest on the deferred balance" and the transaction as a whole. We give the following summary of their example: A customer wished to acquire a Caterpillar tractor which ordinarily sold for a total selling price (including sales tax) of $30,000. The customer, however, did not wish to make the down payment necessary in order to purchase on a conditional sales contract. He was told he could lease the tractor for six months at a monthly rental of $2,000, and that if at any time during the lease term or at the end of the term, he should desire to purchase the tractor, it was Peterson's practice to consider the total rental payments made as a down payment on the sale. In the event of such an election, the customer would also be required to pay an additional amount denominated "interest on the deferred balance." With that understanding in mind, the customer decided to lease the tractor.

The last-mentioned amount of "interest on the deferred

balance'' was a total of a series of computations (one for each month the lease is in effect prior to the sale) made by applying an agreed percentage rate to the difference between the originally stated selling price and the amount of rentals paid up to the month computed. In the hypothesis adopted by the parties, where a tractor with an originally stated selling price of $30,000 (including sales tax) was leased for a six-month term at a rental of $2,000 per month payable in advance, upon the lessee's expressing a desire to purchase, the total rental paid in the sum of $12,000 was credited as a down payment. The ''interest on the deferred balance'' was computed as follows: For the first month 6 per cent of $28,000 ($30,000 less the first month's rent) divided by 12; for the second month, 6 per cent of $26,000, similarly calculated; for the third month, 6 per cent of $24,000, and so on for each of the six months. In the example used such calculations produced a total sum of $690. So in the hypothetical case, the customer would have to pay $18,000 ($30,000 less credit for $12,000 rent) plus $690 ''interest on the deferred balance.''

The lease and subsequent sale, if any, would be carried out in the following manner: A document designated ''Purchaser's Order'' would be executed by Peterson and the customer. Such document (attached by the parties as an exhibit to their stipulation of facts) was a printed order form of Caterpillar. Peterson's name and address were inserted as distributor or dealer. In its tenor, the document is a request or order by the customer to ship through Peterson a specifically described tractor ''for which the undersigned agrees to pay f.o.b. San Francisco $30,000.'' It states selling price, the separately stated sales tax and the sum of $30,000 (under the hypothesis) as the total thereof. Blanks provided for the terms of the payment, however, are not filled in. Instead, appear the words: ''Rental—$2000.00 per month, 6 months rental guaranteed.'' Immediately below the foregoing appears the following: ''The deferred balance is to bear interest at 6% per year until final payment is made,'' all of which words are part of the printed order form except the numeral ''6'' which is typed. (The parties, however, stipulated that the percentage rate of 6 per cent ''is illustrative only.'') The order was signed by the customer and accepted and signed by Peterson.

When the customer took delivery of the tractor, a rental agreement (also attached as an exhibit by the parties) would

be signed by Peterson as lessor and the customer as lessee, for a term of six months at the above monthly rental of $2,000, such agreement containing many of the usual covenants but making no mention of "interest on the deferred balance." After the rental agreement was executed, the relationship of Peterson and the customer was, according to the stipulation of the parties, "solely one of lessor and lessee." The customer's only obligation was to pay the agreed rent for the term of the lease. He had neither an option nor an obligation to purchase. Peterson had no obligation to sell. The above-mentioned purchaser's order was retained by Peterson "solely as a salesman's memorandum of the transaction."

If the customer later desired to purchase the tractor, either during the term of the lease or at the end thereof, the sale would be handled in one of three ways:

(a) The most common method was to finance on a conditional sales contract the difference between the originally stated selling price and the rentals paid (i.e., $30,000 less $12,000 or $18,000) and to bill directly for the additional amount of "interest on the deferred balance" ($690). The purchaser would be sent three invoices. The first would indicate the originally stated selling price (including separately stated sales tax), that the purchaser was credited with the amount of rentals paid ($12,000) and that the difference ($18,000) was carried as a balance forward to the conditional sales contract. The second invoice would be for interest on the amount to be financed by the conditional sales contract. The purchaser and Peterson would execute a conditional sales contract to secure the payment of the last two amounts over a period of months. The third invoice would be for the "interest on the deferred balance" which would be due "net cash on presentation of invoice."

(b) The second method of handling the sale was to finance the "interest on the deferred balance" along with the other two amounts. The purchaser would again receive three invoices. The first would be the same as hereinabove explained, namely for the difference between the originally stated selling price and the rentals received. The second would be for the "interest on the deferred balance," except that it would indicate that the charge was carried forward to the conditional sales contract. The third would be for the interest on the total amount to be financed, under this method $18,690 instead of $18,000.

(c) Under the third method, all of the $18,690 would be paid in cash. The customer would be sent two invoices. The first invoice was in the same form and amount as that used in the first method, except that the terms would be "net cash on presentation" rather than "to conditional sales contract." The second invoice would be for the "interest on the deferred balance" and in the same form and amount as noted in the first method above.

If the lessee did not desire to purchase the leased equipment, his only obligation was to pay the agreed rental and comply with the other covenants of the lease, including that requiring the return of the equipment upon the termination of the lease. In such event, he would not be required to pay the "interest on the deferred balance."

Peterson received no monies or compensation in any other form, either for the lease or for the sale, other than those which we have heretofore set forth.

The written stipulation of the parties further provides that the aforementioned rental agreements "are bona fide leases and not leases 'in lieu of a transfer of title, exchange, or barter' within the meaning of section 6006 of the Revenue and Taxation Code."

Peterson paid the sales tax for the period in question, measured by the originally stated selling price ($30,000) less the separately stated sales tax ($1,153.84 in the hypothesis used). Upon such hypothesis, Peterson would report and pay sales tax on $28,864.16. There is no controversy concerning the sales taxes so paid.

The board, however, determined that the total selling price also included the "interest on the deferred balance" and assessed a deficiency for taxes due on the total of such amounts. Peterson paid the deficiency and timely filed a claim for refund. Upon denial of the claim, Peterson commenced the instant action.

The trial court found that the facts as contained in the written stipulation of the parties were true and adopted said stipulation as its findings of facts. The trial court both found and concluded in identical language that "the amount denominated by plaintiff as 'interest on deferred balance' is not part of the 'gross receipts' of sale as defined by Cal. Rev. & Tax. Code § 6012 and is not includable in the measure of the sales tax to be levied by the defendant." Judgment was there-

upon rendered in favor of Peterson and against the board in the sum of $7,110.66 with interest and costs.

The sole question presented upon this appeal is whether the amount denominated by Peterson as "interest on the deferred balance" is includable in the gross receipts of the sales and therefore subject to tax under the Sales and Use Tax Law.      Since this question involves the applicability of a statute to a given situation presented on stipulated and uncontradicted facts, it is a question of law (*Pacific Pipeline Constr. Co.* v. *State Board of Equalization,* 49 Cal.2d 729, 736 [321 P.2d 729]). Upon this record, we are not bound by the findings below in our determination of the question.

Section 6051 of the Revenue and Taxation Code imposes a sales tax on the ". . . gross receipts . . . from the sale of all tangible personal property sold at retail. . . ."

Section 6006 provides in relevant part as follows: " 'Sale' means and includes: (a) Any transfer of title or possession, exchange, barter, lease, or rental, conditional or otherwise, in any manner or any means whatsoever, of tangible personal property for a consideration. 'Transfer of possession,' 'lease,' or 'rental' includes only transactions found by the board to be in lieu of a transfer of title, exchange, or barter." We are not here concerned with the problem of determining whether the lease transaction was "in lieu of a transfer of title," since, as we noted above, the parties have stipulated that the leases of equipment here involved are bona fide leases and not in lieu of sales and that the sales occurred after the termination of the leases.

The definition of gross receipts is found in section 6012 which provides in part that " 'Gross receipts' mean the total amount of the sale or lease or rental price, as the case may be, of the retail sales of retailers, valued in money, whether received in money or otherwise. . . ." Such section further provides in substance that there is no deduction for cost of property sold, the cost of materials used, labor or service cost, interest paid, losses or any other expense or the cost of transportation of the property prior to its sale to the purchaser. It is also provided in substance that "gross receipts" do not include cash discounts allowed and taken, the sales price of property returned by customers under certain conditions and other specified items not relevant here. Section 6012 further provides: "The total amount of the sale or lease or rental price includes all of the following: (a) Any services that are a

part of the sale. (b) *All receipts,* cash, credits, and property of any kind. (c) Any amount for which credit is allowed by the seller to the purchaser." (Emphasis added.)

At the outset, we dispose of one preliminary matter which is suggested by the use of the word "interest" in the phrase "interest on the deferred balance." The amount denominated by Peterson as "interest on the deferred balance" is not interest collected in connection with a sale on credit and therefore excludable under Ruling No. 61(a) of the board (18 Cal. Adm. Code, § 2041). By its terms this ruling applies where the property is "sold on credit." In the case before us Peterson extended no credit to the customer during the term of the lease. The customer owed Peterson nothing except the monthly rental. The only existing legal relationship was that of lessor and lessee. There was no obligation of a debtor to a creditor, and no "balance" of any obligation being "deferred." The word "interest" is therefore a misnomer. Indeed, respondent makes no serious contention that the amount is deductible or excludable under the foregoing Ruling No. 61(a) applicable to sales on credit.

We turn to the crucial question of the case: Is the amount denominated "interest on the deferred balance" received by Peterson as part of the consideration for the sale of the equipment or only in connection with the leasing of it? Our attention has not been directed to any reported case which squarely answers this question.

It is difficult to conceive how such amount can be regarded as incident to the lease. No mention is made in the written lease of any such amount. No covenant of the lease fixes its payment. The customer's only obligations under the lease are to pay the monthly rental and, in the event of the loss or destruction of the equipment, the agreed full value of $30,000 together with interest from the date of the lease until date of payment "with a credit for all rental payments theretofore made." The latter covenant with respect to loss or destruction is not applicable here. No reasonable implication can attach the "interest on the deferred balance" to the lease. Such amount becomes significant only if and when the lessee desires to become a purchaser. He is not obligated to purchase; he has no option or other enforceable right to purchase. If he decides not to purchase, he does not pay the so-called "interest on the deferred balance" or any equivalent of it.

Indeed, it is not considered, computed or charged until and unless the sale is made.

On the other hand, the lessee cannot purchase the equipment until he agrees to pay the additional amount of "interest on the deferred balance." He pays such an amount in his capacity as a purchaser, in connection with a *sale* transaction, and not in his capacity as a lessee, in connection with a lease transaction. The economic realities are those of a sale and not a lease.

Respondent, however, argues that the "interest on the deferred balance" is its compensation for the period of the lease. Upon conversion by the customer from a lease to a sale, so runs this argument, Peterson does not receive back the equipment, which has been sold, and does not have any rental payments, all of which have been credited to the down payment. All that Peterson has is the above interest amount. This amount, it is argued, is actually consideration paid by the customer for the lease and therefore is no part of the sale.

Respondent's argument cannot prevail against the stipulated facts before us and an analysis of the legal principles they call into play. First, the argument attempts to ignore the lease itself: the document before us is absolutely silent as to any alternate consideration moving to Peterson upon conversion from lease to sale. It appears to us that if Peterson had intended to provide for an additional or alternate consideration to be paid as rental, in the event of a conversion, it could very easily have provided for it among the terms of the lease. (Since this problem is not before us, we do not herein decide one way or the other what the taxable character of such alternate or additional consideration might have been.)

Secondly, the very facts upon which Peterson relies, show that the so-called "interest on the deferred balance" is treated as part of the consideration for the sale. ▪▪▪ Consideration is an act or return promise, bargained for and given in exchange for a promise giving a benefit to the promisor or imposing a detriment on the promisee. (Civ. Code, § 1605; Rest., Contracts, § 75; see also *Simmons* v. *California Institute of Technology,* 34 Cal.2d 264 [209 P.2d 581]; *First Nat. Bank of Stockton* v. *Pomona Tile Mfg. Co.,* 82 Cal.App.2d 592 [186 P.2d 693].) Applying the foregoing principle to the facts before us, it appears that when the customer desires to purchase the tractor, Peterson allows full credit for the rental

paid. If this were done, and no more, it is obvious that the customer would receive an advantage, since he not only had the use of the equipment for six months without any obligation to buy it, but also had all his rent theretofore paid fully credited against the purchase price. It is reasonably clear that Peterson would not consummate such arrangement, unless it could get the customer to pay something extra. In effect, to use the example of the parties, Peterson, who is also under no antecedent obligation to enter into the sale, bargains with the customer that it will sell the tractor for $30,000 less rental paid of $12,000 or $18,000 if, and only if, the customer will pay an additional $690. ▆ It is clear that the $690 is a detriment to the customer (promisee) and benefit to Peterson (promisor) bargained for and given in exchange for Peterson's promise to sell for the net amount of $18,000. It is, therefore, a part of the consideration of the sale. The economic realities of the transaction are that the customer is actually paying $30,690 for the tractor.

▆ Since the $690 is a part of the consideration for the sale, it is unquestionably a receipt from the sale. ▆ All receipts from sales are gross receipts unless they come within an applicable exception or exclusion. (Rev. & Tax. Code, § 6012; see *Bekins Van Lines, Inc.* v. *Johnson*, 21 Cal.2d 135, 139-140 [130 P.2d 421]; *Robertson* v. *Johnson*, 55 Cal.App. 2d 610, 612-614 [131 P.2d 288]; *Pacific Greyhound Lines* v. *Johnson*, 54 Cal.App.2d 297, 301-302 [129 P.2d 32]; see also *Pacific Gas & Electric Co.* v. *Roberts*, 176 Cal. 183, 188-192 [167 P. 845]; *County of Los Angeles* v. *Southern Counties Gas Co.*, 42 Cal.2d 129, 146-147 [266 P.2d 27], dissenting opinion of Mr. Justice Carter.) It is "presumed that all gross receipts are subject to the tax until the contrary is established." (Rev. & Tax. Code, § 6091.) ▆ Respondent has not shown, nor does it appear, that the amounts in controversy come within any applicable exception or exclusion.

Respondent argues that upon the authority of *Select Base Materials, Inc.* v. *Board of Equalization*, 51 Cal.2d 640 [335 P.2d 672], the amount in controversy before us cannot be considered a gross receipt of sale. In *Select Base Materials, Inc.* it was held that the sale of certain granite took place when delivery was made to the customer and that the cost of transportation prior to the sale, arising out of charges paid by the seller to independent truckers, was part of the sales price of the granite and properly includable within the seller's

672

gross receipts for sales tax purposes under the provisions of section 6012. We fail to see the applicability of the foregoing decision to the case before us or how it helps respondent in any way.

We hold that the amount denominated as "interest on the deferred balance" is a part of the consideration for the sale involved and not of the lease preceding the sale and that such amount being a receipt from the sale, falls directly within the language of section 6012 of the Revenue and Taxation Code defining gross receipts. We hold, therefore, that the amounts in controversy were properly includable within Peterson's gross receipts for sales tax purposes.

The judgment is reversed.

Bray, P. J., and Tobriner, J., concurred.

A petition for a rehearing was denied February 15, 1962, and respondent's petition for a hearing by the Supreme Court was denied March 28, 1962. Schauer, J., McComb, J., and White, J., were of the opinion that the petition should be granted.