[Civ. No. 27631.    Second Dist., Div. Four.    May 19, 1964.]

CLIFFORD V. STADLER, as Special Administrator, etc. Plaintiff and Appellant, v. STATE BOARD OF EQUAL-IZATION, Defendant and Respondent.

Russell & Schureman and Theodore W. Russell for Plaintiff and Appellant.

Stanley Mosk, Attorney General, Dan Kaufmann, Assistant Attorney General, and Neal J. Gobar, Deputy Attorney General, for Defendant and Respondent.

BURKE, P. J.—Plaintiff appeals from a judgment of the trial court that he had not overpaid his motor vehicle transportation license tax ("transportation tax") and denying him recovery of such taxes paid under protest. Plaintiff is a participating carrier involved in the interstate shipment of goods. Each shipment here involved was shipped origin-to-destination as a single through shipment under a single bill of lading, but was physically handled as a "joint through movement" by two or more independent carriers acting under an "interline" arrangement. Under such an arrangement plaintiff and each participating carrier were independently responsible for moving the goods over his portion of the journey and received a share of the through shipment charge. This share was fixed by a "Division Agreement" among the participating carriers.

Plaintiff's participation in the physical shipments was entirely within the State of California. Defendant, State Board of Equalization ("Board"), included all of plaintiff's receipts from such division agreements and assessed transportation tax based thereon. Plaintiff paid the tax, exhausted his administrative remedies, then instituted this action to recover what he maintains were taxes excessively and illegally levied upon him. The ultimate question presented on appeal is the proper interpretation of the statutory definition of "gross receipts" taxable under the transportation tax law. As applied to shipments moving in interstate commerce between points within California and points outside of California, the statutory provisions most directly involved are Revenue and Taxation Code sections 9606 and 9653, subdivision (b).[1]

Under the Division Agreements carriers originating or delivering shipments received a greater proportion of the total freight charges than that which a mileage proration would produce because they incurred certain costs for handling, documentation and administrative overhead, and because

---

[1]Rev. & Tax. Code, § 9606, provides, *inter alia*, as follows: " 'Gross receipts' include all receipts from transportation operations entirely within this State and a proportion, based upon the proportion of the mileage within this State to the entire mileage over which such operations extend, of the receipts from operations passing through, into, or out of this State, or partly within and partly without this State."

Section 9653, subd. (b), provides as follows: "The tax does not apply to the gross receipts derived from the transportation of persons or property wholly within incorporated cities or between incorporated cities or incorporated cities and private property or wholly on private property where no portion of the public highway outside the corporate limits of the cities or private property is traversed in such operation."

of traffic congestion and other circumstances not influenced by the distance of transportation and not encountered by other carriers participating in the movement of the goods. As to all of these shipments plaintiff was either an originating or delivering carrier. Thus, the proportion of the total freight charges which he received was in each instance an amount greater than that which he would have received had the total freight charges been divided between the participating carriers on a straight mileage proration basis. The Board treated the full amount of such receipts by plaintiff as "gross receipts" taxable under the law and did not itself apply to such receipts any mileage proration. Had it applied a straight mileage proration the amount of plaintiff's taxable receipts would have been less and correspondingly its taxes would have been less.

On appeal plaintiff asserts that the interpretation placed upon section 9606 by the trial court is erroneous, being inconsistent with the legislative purpose of the section and contrary to the evidence. He maintains that the key word in the statutory language is "operations" and that in the context in which it appears the term can have reference either to physical activities incident to the movement of goods or to the commercial transactions which themselves constitute the commerce and are the direct source of the revenues being considered. Plaintiff contends the trial court adopted the "physical activities" interpretation.

As the Board views the law, and we believe, correctly, "transportation operations" refer to any and all activities which contribute to an origin-to-destination movement. (See *Bekins Van Lines, Inc.* v. *Johnson,* 21 Cal.2d 135 [130 P.2d 421]; *Pacific Greyhound Lines* v. *Johnson,* 54 Cal.App.2d 297 [129 P.2d 32].) Under this interpretation, each long-line carrier reported and paid a tax on that portion of its receipts under the division agreement as its mileage in California bore to its total mileage. Thus, in operation the law did not impose any undue burden upon interstate commerce, since it is recognized that receipts for interstate shipments must be allocated among the several states through which the particular shipment passes. Plaintiff was similarly taxed, his total tax including the tax that would be referable to mileage proration alone.

In *Central Greyhound Lines, Inc.* v. *Mealey,* 334 U.S. 653 [68 S.Ct. 1260, 92 L.Ed. 1633], the court held that one proper method of allocation of taxes based on the revenues

from such shipments is according to mileage within and without the taxing state. The Supreme Court did not state that this method is the *only* proper method. ■ The test is stated generally, "The tax may be 'fairly apportioned' to the business done within the state by a fair method of apportionment." (*Western Live Stock* v. *Bureau of Revenue,* 303 U.S. 250, 255 [58 S.Ct. 546, 82 L.Ed. 823, 827-828, 115 A.L.R. 944, 948].) Since all of plaintiff's mileage was in California the Board included as taxable "gross receipts" all amounts allocated to plaintiff under the division agreement. Under this plan any carrier who participated in interstate shipment entirely outside of California, and therefore had no California mileage, paid no California tax.

■ The tax is a revenue measure designed to secure for the state a fair return for the use of its public highways in transporting persons or property for compensation (*In re Bush,* 6 Cal.2d 43 [56 P.2d 511]), and the rate applied is 3 per cent of the gross receipts of the operators from their operations. Plaintiff's main complaint as to the Board's interpretation and application of the law is that it was improper under section 9606 to allocate to California all plaintiff's receipts for his services rendered in California because not apportioned on a mileage basis, and that if such allocation is proper under the statute, the law is unconstitutional as applied to plaintiff.

The Board has established the policy of looking to each participating carrier to account for his own gross receipts apportioned according to his own mileage in California and his total mileage. Plaintiff asserts that his tax should be measured on that portion of the total shipment price which his California mileage bears to the total shipment mileage, and without regard to the amount he actually received.

Under the Board's method, the Board taxes such proportion of the operator's gross receipts as his mileage in California bears to his total mileage. Thus, each operator upon completion of participating in a shipment will know what his own receipts are and what distances are traveled by his own vehicle within and without Califronia, and the operator's necessary tax information is both available to him in his own books and records and to the Board for auditing purposes. Under plaintiff's proposed allocation, it is conceivable that it could cause some long-line carriers to pay a tax measured by allocated amounts in excess of their actual gross receipts. The Board's method of allocation is based upon the operators'

own division agreements. ██ It is not unreasonable for the Board to follow the apportionment established by the operators themselves. Thus, the transportation tax is actually measured by receipts. Mileage is relevant only to allocate receipts among the states traversed.

The method approved by the trial court in the within case has been used as a long-standing practice by the Board and also by other operators interlining with plaintiff. ██ Administrative interpretations of controlling statutes by public officers upon whom the duty of administering is imposed are entitled to great weight and will not be overturned unless clearly erroneous. (*Riley* v. *Thompson*, 193 Cal. 773, 778 [227 P. 772].)

██ Plaintiff points out that under the Board's approach, different carriage arrangements may result in different tax consequences. Therefore, he asserts that the Board's interpretation of section 9606 does not operate uniformly as required by article I, section 11, of the California Constitution. The latter section, however, only requires that a tax be applied to all members of a class in the same manner. The uniformity required is uniformity in operation, not uniformity in result. (*Wholesale Tobacco Dealers Bureau* v. *National Candy etc. Co.*, 11 Cal.2d 634, 661 [82 P.2d 3, 118 A.L.R. 486].) Here, the Board's interpretation applies to all members of a class in the same manner. All originating and terminating carriers, which perform services in addition to hauling, are taxed the same; all nonoriginating or interim carriers are likewise treated the same. There is no discrimination in application between those performing the same service.

██ The problem presented by the instant case is caused by the plaintiff who seeks an advantage not related to the equities. It is admitted that with respect to that portion of the gross receipts allocated to mileage, all carriers, including originating, interim and terminal, are taxed uniformly. There is no proration of that portion of the gross receipts attributable to the special services performed by the originating and terminal carriers, among the interim carriers for the reason that the latter do not perform any part of such special services. Plaintiff has caused this condition by his participation in the interline agreement. This agreement, interstate in scope, may be regarded as establishing and defining, as between the respective carriers, intrastate as well as interstate rights and obligations. With respect to intrastate business

exclusively, no problem is presented, —all receipts may be properly taxed. With respect to interstate business, in order to conform to the rule of uniformity of levy to avoid the charge of undue burden on interstate commerce, wherever and whenever a terminal, initiating or interim carrier receives preferential "receipts" related to extraordinary services, unrelated to physical haul or mileage, such extra "receipts" must be regarded as payment for special services not related to the "proratable" haul. The interline carriers, in this case, accord this extra or unproportional payment to the initiating or California carrier. Reciprocally, he accords them the correlative payment or extra "receipts" for similar special nonhauling services in their respective states. The tax on such "extra" gross receipts paid for special services does not result in ununiformity of levy on interstate commerce. All carriers are taxed uniformly on a mileage basis, including the California carrier, although the latter pays more tax totally because of such extra transportation services unrelated to mileage haul. Since the other carriers are accorded the reciprocal extra payment for like services when they are the initiating, interim, or terminal carriers there is uniform taxation with respect to the totality of interstate commerce that may be involved.

Plaintiff asserts that approximately 40 per cent of the revenues which were used as the basis for the computation of the tax imposed against him had its source in transactions in which plaintiff's transportation of the property involved was wholly within the limits of incorporated cities and therefore exempt under the provisions of section 9653, subdivision (b). He further contends that such operations, being wholly within municipal limits, did not require plaintiff's use of public highways outside of such incorporated cities. Nevertheless, the shipments having been a part of shipments between points within and without California, and having been in interstate commerce, beyond such municipal limits, and on state highways beyond such limits, under the construction given the law by the Board, plaintiff's revenues therefrom were taxed. Both sections deal with the same subject matter, plaintiff asserts, namely, the definition of taxable "gross receipts." Both sections employ the term "operations" and plaintiff submits it is inconceivable that the Legislature intended such term to have diametrically opposite meanings in these two closely related sections. Yet such, plaintiff contends, is the result of the trial court's decision.

As heretofore noted, however, the Board's interpretation of "transportation operations" in section 9606 is that it refers to any and all "activities" which contribute to an origin-to-destination movement. Section 9653, subdivision (b), however, talks of the "transportation of property," that is, the shipment of an item of property. The word "operation" is used in the singular. Thus, an "operation" could refer to a single complete shipment, and under such interpretation plaintiff's asserted inconsistency disappears.

■ In any event, the legislative history of the enactment of the transportation tax is helpful in construing the intent and purpose of the exemption accorded under section 9653, subdivision (b). This exemption was added at a time when state revenues were not used to maintain city streets. Thus, its obvious purpose was to exclude shipments which made no use whatever of state highways from bearing any of the cost of their upkeep. The courts have construed that when any portion of an operation is outside a city, however, the entire receipts are subject to tax. (*San Diego etc. Ry. Co. v. State Board of Equalization*, 89 Cal.App.2d 267 [200 P.2d 573].) The courts have also held that section 9653, subdivision (b), is an exemption statute which under the rules of construction applicable thereto should be strictly construed against the taxpayer. (*Santa Fe Transp. Co. v. State Board of Equalization*, 51 Cal.2d 531, 539 [334 P.2d 907]; *Robertson v. Johnson*, 55 Cal.App.2d 610, 614 [131 P.2d 388].) The Supreme Court has held that when a single shipment passes over a state highway, even for a short distance, all the carrier's receipts from the shipment are subject to the tax, even where the carrier separates his operations and equipment within the cities from his long-haul operations and equipment. (*Santa Fe Transp. Co. v. State Board of Equalization*, *supra*.) It is logical for the Board to hold that the same result should follow where several carriers join in performing the through movement; that when a carrier such as plaintiff participates in a shipping contract which provides for a single payment for a haul which travels on state highways, as well as in cities, each participating carrier is obtaining benefit from the use of state highways regardless of where his own trucks move, and each participant should be required to support their upkeep. Section 9653, subdivision (b), extends the exemption only where the transportation of property is "wholly" within or between incorporated cities "where no portion of the public highway outside the corpo-

rate limits of the cities or private property is traversed in such operation." (See *Santa Fe Transp. Co.* v. *State Board of Equalization, supra.*) ██ None of the shipments participated in by plaintiff here involved remained entirely within an incorporated city. Thus, they did not qualify for the exemption.

██ There was no error by the Board in its interpretation of the law or its application thereof in "fairly apportioning" the tax on plaintiff's operations. Plaintiff, therefore, is not entitled to any refund of taxes, and the judgment is affirmed.

Kingsley, J., and Jefferson, J., concurred.

A petition for a rehearing was denied June 5, 1964, and appellant's petition for a hearing by the Supreme Court was denied July 15, 1964.