Filed 5/14/15

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| TRI-FANUCCHI FARMS,<br><br>  Petitioner,<br><br>   v.<br><br>AGRICULTURAL LABOR RELATIONS BOARD,<br><br>  Respondent;<br><br>UNITED FARM WORKERS OF AMERICA,<br><br>  Real Party in Interest. | F069419<br><br>(40 ALRB No. 4)<br><br><br>**OPINION** |

-ooOoo-

ORIGINAL PROCEEDING; petition for writ of review.

Sagaser, Watkins & Wieland, Howard A. Sagaser, William M. Woolman and Ian B. Wieland for Petitioner.

J. Antonio Barbosa, Paul M. Starkey and Scott P. Inciardi for Respondent.

Mario Martinez, Thomas P. Lynch and Edgar I. Aguilasocho for Real Party in Interest.

-ooOoo-

Tri-Fanucchi Farms (Fanucchi) is an agricultural employer conducting farming operations in Kern County. In 1977, Fanucchi's agricultural employees elected the United Farm Workers union (UFW) to be their exclusive bargaining representative. However, for reasons UFW has not explained, no bargaining occurred between 1988 and 2012, a period of 24 years. In 2012, UFW contacted Fanucchi and requested the recommencement of bargaining. Fanucchi refused to bargain with UFW on the ground that, because of the 24-year hiatus, UFW had abandoned Fanucchi's agricultural employees. A complaint was then filed against Fanucchi for unfair labor practices, and the matter was referred to an administrative law judge (ALJ). Ultimately, the Agricultural Labor Relations Board (the Board) upheld the determinations of the ALJ that (i) abandonment and similar equitable theories were not available as defenses to the duty to bargain under the Agricultural Labor Relations Act (Lab. Code, § 1140 et seq.,[1]; the ALRA) and (ii) make whole relief was appropriate under the circumstances. (See *Tri-Fanucchi Farms* (2014) 40 ALRB No. 4.) Fanucchi then petitioned this court for review of the Board's decision in *Tri-Fanucchi Farms*, *supra*, 40 ALRB No. 4 and we agreed to review the matter.

The primary issue raised in the petition is whether UFW's past conduct indicating abandonment—namely, its failure to bargain for 24 years—gave Fanucchi a legal basis to refuse to bargain with UFW once that union returned and sought to recommence bargaining. We affirm the Board's position that such facts did not create a defense to bargaining or excuse Fanucchi from its obligation as employer to bargain in good faith with UFW. Rather, in the instant context, the appropriate remedy for UFW's past dereliction was (and is) in the hands of the agricultural employees themselves. That is, if the employees do not wish to be represented by UFW, their recourse is to replace or decertify UFW by a new election pursuant to sections 1156.3 or 1156.7.

---

[1]     Unless otherwise indicated, all further statutory references are to the Labor Code.

We preface our opinion with a brief comment on the broader issue of abandonment. In a companion case decided on the same day herewith, *Gerawan Farming, Inc. v. Agricultural Labor Relations Bd.* (May 14, 2015, F068526/F068676) ___ Cal.App.4th ___, we have concluded that where a union requests the Board to order mandatory mediation and conciliation (MMC) under section 1164 et seq., the employer may defend against the MMC request by raising the issue of the union's abandonment of its representative status, including abandonment thereof based on such union conduct as unreasonably lengthy absence and inactivity. One reason we concluded that such an abandonment theory could properly be raised by the employer in that limited context was the fact that the statutory MMC process is not a mere extension of voluntary bargaining, but is a distinct legal procedure that results in an imposed collective bargaining agreement (CBA) without the parties' consent, on terms dictated by a mediator and ordered by the Board. (§§ 1164, subd. (d), 1164.3.) Since to a substantial degree the MMC process leaves consensual bargaining behind, we held that the employer's continuing duty to bargain was not an obstacle to raising abandonment at that stage. Another reason we allowed the employer to raise abandonment in that context was a recognition that, where a long-absent union returned to the scene and requested the MMC process, in general there would not be an adequate opportunity for employees to exercise a decertification option if they did not want to be represented by that union. Moreover, as more fully explained in said companion case, we concluded that allowing such a theory to be raised in response to a union's MMC request was the only way to preserve the employees' fundamental statutory right to choose.

Here, in contrast to the above described companion case, the parties' dispute arose out of the ordinary bargaining context. The MMC process was not invoked. Fanucchi simply *refused to bargain* with UFW on the ground of the alleged abandonment. As noted above, we conclude that UFW's lengthy period of inactivity did not defeat Fanucchi's duty to engage in bargaining with that union upon request. Accordingly, we

3.

affirm the portion of the Board's decision in *Tri-Fanucchi Farms*, *supra*, 40 ALRB No. 4 that rejected Fanucchi's defenses to the duty to bargain and held that Fanucchi committed unfair labor practices under section 1153, subdivisions (a) and (e), for refusal to bargain with UFW and refusal to provide information. However, for reasons that will be more fully explained below, we reverse the portion of *Tri-Fanucchi Farms*, *supra*, 40 ALRB No. 4 wherein the Board imposed make whole relief against Fanucchi. Such relief was not appropriate in this case because Fanucchi's pursuit of judicial review of the abandonment issue provided needed clarification on that important legal question affecting labor relations under the ALRA.

## FACTS AND PROCEDURAL HISTORY

Fanucchi is a family-owned farming enterprise in Kern County, California, that grows and harvests a variety of crops, including carrots, cotton, tomatoes, garlic, onions and wine grapes. Fanucchi maintains approximately 35 yearround employees and hires several hundred seasonal employees through various labor contractors. In 1977, an election by secret ballot was held by Fanucchi's agricultural employees and UFW was voted by them to be their collective bargaining representative. The election of UFW as the employees' representative was certified by the Board at that time.

Some initial bargaining sessions occurred after UFW was certified. However, based on a poll of its employees in the early- to mid-1980's, Fanucchi believed they no longer wanted UFW to represent them. In 1984, Fanucchi refused to bargain with UFW based on an alleged good faith belief that UFW no longer had majority support and also based on alleged union abandonment of the bargaining unit and related equitable defenses. UFW then brought an unfair labor practices complaint against Fanucchi and the Board held in UFW's favor. Fanucchi filed a petition for review of the Board's decision. In a nonpublished opinion issued by this court in 1987, we rejected each of Fanucchi's claimed defenses and affirmed the Board's findings that Fanucchi's refusal to

4.

bargain was an unfair labor practice.  (*Tri-Fanucchi Farms v. Agricultural Labor Relations Bd.* (Nov. 21, 1987, F008776) [nonpub. opn.].)[2]

In 1988, Fanucchi informed UFW that it was willing to bargain.  According to Fanucchi, UFW responded in 1988 that it would arrange bargaining dates as soon as its negotiator returned from vacation.  However, UFW failed to follow through and no bargaining dates were ever scheduled.  The next time UFW contacted Fanucchi was 24 years later by letter dated September 28, 2012, wherein UFW requested that bargaining be restarted and asked for certain information from Fanucchi relevant to bargaining.  Fanucchi responded by letter of October 19, 2012, stating that it was refusing to bargain with UFW on the ground that UFW had abandoned the bargaining unit and was "no longer the valid collective bargaining representative of [Fanucchi's] employees." Fanucchi's letter also advised that it was seeking judicial review of the abandonment issue—an issue that had not yet been specifically addressed by the courts—and Fanucchi insisted that its refusal should be viewed by UFW as a "technical refusal to bargain" to facilitate such judicial review.  Along these lines, Fanucchi asked UFW to agree to expedited proceedings based on stipulated facts, but UFW was not willing to proceed in that manner.

On March 7 and April 16, 2013, UFW filed charges with the Board's regional office in Visalia alleging that Fanucchi was engaging in unfair labor practices by refusing to bargain and by refusing to provide information relevant to bargaining.  On September 5, 2013, the Board's general counsel (the General Counsel) filed a consolidated administrative complaint (the Complaint) against Fanucchi, claiming that Fanucchi's conduct constituted unfair labor practices in violation of section 1153,

---

[2]    We grant the Board's request for judicial notice of this prior nonpublished opinion.  We do not rely on it as precedent, but merely refer to it as a part of the historical background to the present case.

subdivisions (a) and (e) of the ALRA,[3] and requesting that the Board award make whole relief for the benefit of the employees (§ 1160.3).

On October 8, 2013, Fanucchi filed an answer to the Complaint. Fanucchi's answer admitted to the material underlying facts, but claimed as a defense to the duty to bargain that UFW abandoned its representative status and/or had unclean hands and/or was barred by laches, all because of the 24-year period of UFW inactivity. Further, the answer reiterated that Fanucchi's refusal to bargain was in good faith for the purpose of obtaining judicial review of an important labor relations issue (i.e., union abandonment).

A hearing of the case was scheduled for October 21, 2013, before ALJ Thomas Sobel. Prior to the hearing, the General Counsel filed a motion in limine with the ALJ requesting the exclusion of all evidence relating to Fanucchi's abandonment defense on the ground that such a defense to an employer's duty to bargain was not recognized under established Board precedent. The ALJ granted the motion in limine, which he regarded as in substance a motion to strike or a judgment on the pleadings relating to Fanucchi's abandonment defense and the related equitable defenses premised on the 24-year hiatus. The ALJ held that even if the facts Fanucchi sought to prove were true, they did not establish a defense to bargaining; therefore, the motion was granted.

Having rejected Fanucchi's claimed defenses to the duty to bargain, the ALJ proceeded to consider the merits of the Complaint in light of Fanucchi's answer, which had admitted to the material factual allegations. The ALJ found that Fanucchi's refusal to bargain, etc., constituted unfair labor practices. On the issue of whether to award make whole relief, the ALJ found that Fanucchi's refusal to bargain as a means of seeking judicial review was not justifiable because the Board's precedents were very clear that

---

**3** Under section 1153, it is an unfair labor practice for an employer "[t]o interfere with, restrain, or coerce agricultural employees in the exercise of the rights guaranteed in Section 1152" (*id*., subd. (a); or "[t]o refuse to bargain collectively in good faith with labor organizations certified pursuant to the provisions of Chapter 5 (commencing with Section 1156) of this part" (*id*., subd. (e)).

6.

purported abandonment based on past union inactivity was not a defense to a current request to bargain by the same union. Therefore, the ALJ found that Fanucchi's efforts to obtain judicial review of a "settled" labor issue did not further the purposes of the ALRA. Consequently, the ALJ held that make whole relief should be awarded against Fanucchi.

The ALJ's written decision was transferred to the Board. On November 20, 2013, Fanucchi filed with the Board 15 "exceptions" to the ALJ's decision. Among other things, the exceptions challenged the ALJ's decision to treat the motion in limine as a motion for judgment on the pleadings, the ALJ's rejection of Fanucchi's abandonment and related equitable defenses, the ALJ's refusal to take evidence concerning those defenses, and the ALJ's decision to award make whole relief.

On April 23, 2014, the Board issued its decision, which was reported at *Tri-Fanucchi Farms*, *supra*, 40 ALRB No. 4. The Board found, in agreement with the ALJ, that Fanucchi's refusal to bargain with UFW and to provide information constituted violations of section 1153, subdivisions (a) and (e). The Board rejected Fanucchi's contention that a defense existed to its duty to bargain based on the alleged abandonment on the part of UFW. The Board likewise rejected the similarly framed equitable defenses of laches, estoppel and unclean hands based on the same 24-year bargaining hiatus. The equitable claims were also rejected on the additional ground that there was no prejudice or harm caused to Fanucchi. On the question of whether make whole relief was proper, the Board expressed that because there was already established Board precedent rejecting the abandonment theory, "[Fanucchi's] position cannot be said to further the policies and purposes of the ALRA." (*Tri-Fanucchi Farms*, *supra*, 40 ALRB No. 4, p. 18.) Accordingly, the Board agreed with the ALJ that make whole relief was appropriate.

Fanucchi filed a petition to this court seeking our review of the Board's decision in *Tri-Fanucchi Farms*, *supra*, 40 ALRB No. 4. We issued a writ of review.

7.

## I. Standard of Review

The issues raised by Fanucchi are legal, primarily involving the interpretation of the ALRA and the question of the availability of certain defenses to an employer's statutory duty to bargain under the ALRA. Integral to these questions are the basic legislative purposes and policies of the ALRA. Since the Board is the administrative agency entrusted with enforcement of the ALRA, its interpretation of the ALRA is given deference by the courts and will be followed if not clearly erroneous. (*Montebello Rose Co. v. Agricultural Labor Relations Bd.* (1981) 119 Cal.App.3d 1, 24 (*Montebello Rose*).) Nevertheless, it is fundamental in statutory construction that courts should ascertain the intent of the Legislature so as to effectuate the purpose of the law. (*J.R. Norton Co. v. Agricultural Labor Relations Bd.* (1979) 26 Cal.3d 1, 29 (*J.R. Norton Co.*); *Bodinson Mfg. Co. v. California E. Com.* (1941) 17 Cal.2d 321, 326 [courts state the true meaning of a statute finally and conclusively].) Thus, while an administrative agency is entitled to deference when interpreting policy in its field of expertise, it cannot alter or amend the statute it is interpreting, or enlarge or impair its scope. (*J.R. Norton Co.*, *supra*, at p. 29; *Adamek & Dessert, Inc. v. Agricultural Labor Relations Bd.* (1986) 178 Cal.App.3d 970, 978 (*Adamek & Dessert*).)

## II. ALRA Statutory Overview

The issue of whether abandonment or other equitable theories may be raised as a defense to bargaining requires an understanding of the statutory provisions and main purposes of the ALRA. We therefore begin with a brief overview of the ALRA.

In 1975, the California Legislature enacted the ALRA "to provide for collective-bargaining rights for agricultural employees" (§ 1140.2) by putting into place a system of laws generally patterned after the National Labor Relations Act (29 U.S.C. § 151; the NLRA). (*J.R. Norton Co.*, *supra*, 26 Cal.3d at p. 8.) The ALRA declares it is the policy of the State of California "to encourage and protect the right of agricultural employees to

8.

full freedom of association, self-organization, and designation of representatives of their own choosing … for the purpose of collective bargaining or other mutual aid or protection." (§ 1140.2.)[4] As noted by our Supreme Court, "[a] central feature in the promotion of this policy is the [ALRA's] procedure for agricultural employees to elect representatives 'for the purpose of collective bargaining with respect to rates of pay, wages, hours of employment, or other conditions of employment.' (*Id.*, § 1156 et seq.)" (*J.R. Norton Co.*, *supra*, at p. 8.)

Under that election procedure, if a proper petition has been filed, the Board directs that an election be held by a secret ballot vote of employees to determine an issue of employee representation, such as whether a particular labor organization shall be the employees' bargaining representative.[5] (§§ 1156, 1156.3.) Except in certain runoff elections, every ballot "shall provide the employee with the opportunity to vote against representation by a labor organization by providing an appropriate space designated 'No Labor Organizations.'" (§ 1156.3, subd. (c).) After the election, the Board "shall certify" the result unless it determines based on a sustained election challenge "that there are sufficient grounds to refuse to do so." (§ 1156.3, subd. (e)(2) [stating grounds for such refusal].)

If a labor organization (i.e., a union)[6] is certified as the winner of such an election and thus becomes the employees' bargaining representative, certain legal consequences follow. First, a statutory bar exists to holding another representation election for at least the initial one-year certification period. (§§ 1155.2, subd. (b), 1156.5, 1156.6.) Second, a duty to bargain is created, which is owed by the employer to the union and vice versa.

---

[4]     The same employees also have the right "to refrain from any or all such activities …." (§ 1152.)

[5]     A similar procedure exists by which the agricultural employees may vote to decertify a labor organization so that it is no longer their representative. (§ 1156.7.)

[6]     The terms "union" and "labor organization" are used synonymously herein.

9.

(§§ 1153, subd. (e), 1154, subd. (c), 1152.)  However, unlike the election bar, the duty to bargain does not expire with the initial one-year period.  That is because a union's status as the employees' certified bargaining representative continues beyond the one-year period for purposes of extending the parties' duty to bargain.  (*Montebello Rose Co.*, *supra*, 119 Cal.App.3d at pp. 24–26, 29 [affirming ALRB's conclusion that a certified union continues to enjoy that status after the initial certification year expires].)[7] Consequently, it has been held that once a union is certified as the bargaining representative of an employer's agricultural employees, the employer's duty to bargain with that union continues until the union is replaced or decertified through a subsequent election pursuant to sections 1156.3 or 1156.7.  (*Montebello Rose*, *supra*, at pp. 23–24, 29 [approving statutory interpretation adopted by the Board in *Kaplan's Fruit & Produce Co., Inc.* (1977) 3 ALRB No. 28]; *Adamek & Dessert*, *supra*, 178 Cal.App.3d at p. 983; *Bruce Church, Inc.* (1991) 17 ALRB No. 1, p. 13 [stating principle adhered to by the Board that "a [u]nion remains the certified representative until decertified"]; *Pictsweet Mushroom Farms* (2003) 29 ALRB No. 3, p. 7 [same].)[8]

In summary, the ALRA recognizes, protects and promotes agricultural employees' right to collective bargaining (§ 1140.2) and, in the furtherance of that right, the ALRA requires the agricultural employer and the employees' certified representative to bargain collectively in good faith.  (§§ 1153, subd. (e), 1154, subd. (c).)  The ALRA defines the parties' mutual obligation to bargain collectively in good faith as follows:  "[T]o bargain collectively in good faith is the performance of the mutual obligation of the agricultural

---

[7]     Although section 1155.2, subdivision (b), refers to an initial one-year period of certification (and allows for a one-year extension thereof), that time limitation has been held to relate only to the election bar, not to the duty to bargain aspect of certification.  (*Montebello Rose*, *supra*, 119 Cal.App.3d at pp. 24–30.)

[8]     A third consequence of certification is that no CBA may be negotiated or entered by the employer with any other (not currently certified) labor organization.  (§ 1153, subd. (f).)  The ALRA further declares that only a certified labor organization may be a party to a legally valid CBA.  (§ 1159.)

employer and the representative of the agricultural employees to meet at reasonable times and confer in good faith with respect to wages, hours, and other terms and conditions of employment, or the negotiation of an agreement, or any questions arising thereunder, and the execution of a written contract incorporating any agreement reached if requested by either party, but such obligation does not compel either party to agree to a proposal or require the making of a concession." (§ 1155.2, subd. (a).)

When an employer or labor organization fails to bargain in good faith as required, or when other unfair labor practices (as defined in the ALRA) have occurred, recourse to the Board is provided and the Board is empowered to issue orders or take remedial action to effectuate the purposes of the ALRA. (§§ 1160–1160.9; see, e.g., *Harry Carian Sales v. Agricultural Labor Relations Bd*. (1985) 39 Cal.3d 209, 229–230 [discussing Board's remedial authority relating to unfair labor practices].)

## III.    Abandonment

With the above statutory framework in mind, we now consider the issue of whether UFW's lengthy absence and inactivity in this case created an abandonment defense to Fanucchi's duty to bargain. We hold it did not.

We begin with the Board's perspective on the issue. In its decision in the instant case, reported at *Tri-Fanucchi Farms*, *supra*, 40 ALRB No. 4, the Board explained its rejection of Fanucchi's claim that UFW's conduct provided a defense to bargaining:

> "The Board's previous decisions have been very clear that, under the ALRA, the fact that a labor organization has been inactive or absent, even for an extended period of time, does not represent a defense to the employer's duty to bargain. (*Dole Fresh Fruit Co., Inc*. (1996) 22 ALRB No. 4; *Pictsweet Mushroom Farms*[, *supra*,] 29 ALRB No. 3; *San Joaquin Tomato Growers, Inc*. (2011) 37 ALRB No. 5.) The Board recently reaffirmed its holdings on abandonment and confirmed that, except in cases where the union disclaims interest in representing the bargaining unit or becomes defunct, the union remains certified [for purposes of the employer's duty to bargain] until removed or replaced through the ALRA's election procedures, regardless of any bargaining hiatus or union inactivity

11.

that may have occurred.  (*Arnaudo Brothers, LP* (2014) 40 ALRB No. 3[,] pp. 9–12.)  These principles stem from the legislative intent inherent in the ALRA that the power to select and remove unions as bargaining representatives should reside with agricultural employees and not with their employers.  [Citation.]  The facts alleged by [Fanucchi] fall squarely within this well-established rule." (*Tri-Fanucchi Farms*, *supra*, 40 ALRB No. 4, p. 8, fn. omitted.)

Additionally, in the same decision of this matter in *Tri-Fanucchi Farms*, *supra*, 40 ALRB No. 4, the Board further explained that the principal remedy for such union failings—namely, a new election—is left in the hands of the agricultural employees:

"In cases where a union is failing to adequately carry out its duties as bargaining representative and employees' appeals to the union itself are insufficient to resolve the situation, the remedy for such dereliction is for the members of the bargaining unit to seek to decertify the union or replace it with another union through the ALRA's election procedures.  Bargaining unit members may also, where appropriate, seek to enforce their union's duty of fair representation.  [Citation.]  While these procedures are unavailable to the employer, it need not stand idly by if a certified union refuses to come to the bargaining table but may use the ALRA's unfair labor practice procedures to assert a claim that a union is unlawfully refusing to bargain.  [Citation.]  Additionally, a union that fails to respond to changes to terms and conditions of employment proposed by the employer may be held to have waived its right to bargain over those changes, privileging the employer to implement them without bargaining.  [Citation.]  However, what the employer may not do is impose its own choice on employees by unilaterally determining that it will no longer bargain with the union.  [¶]  Accordingly, [Fanucchi's] claim that it was not obligated to bargain with the UFW due to an alleged period of inactivity by the UFW does not represent a legally cognizable defense to the duty to bargain under the ALRA.…" (*Tri-Fanucchi Farms*, *supra*, 40 ALRB No. 4, pp. 8–9.)

The Board's position (recited above) on the abandonment issue as it relates to the employer's duty to bargain is consistent with how California appellate courts have construed the ALRA.  An important principle recognized in the ALRA cases is that an employer's duty to bargain with the originally certified union *continues* until that union is replaced or decertified by a subsequent election.  (See *Montebello Rose*, *supra*, 119

Cal.App.3d at pp. 23–24 ["employer's duty to bargain does not lapse after one year but continues until such time as the union is officially decertified as the employee bargaining representative"]; *F&P Growers Assn. v. Agricultural Labor Relations Bd*. (1985) 168 Cal.App.3d 667, 672 (*F&P Growers*) ["an employer's duty to bargain does not lapse after one year even in the absence of an extension"]; *Adamek & Dessert*, *supra*, 178 Cal.App.3d at p. 983 ["the company has a duty to bargain with the union until the union is decertified through a second election"].) In accordance with this principle, if a certified union's neglect or inaction causes the agricultural employees to be dissatisfied with that union, the appropriate remedy is for the employees to pursue a decertification election. (See, e.g., §§ 1156.3 & 1156.7; *F&P Growers*, *supra*, at pp. 674–678.) As one court put it, "So long as the employees can petition for a new election if they wish to remove the union, the employer has no real cause for concern about whether it is bargaining with the true representative of its employees." (*Montebello Rose Co*., *supra*, at p. 28.)[9]

The case of *F&P Growers* sheds additional light on the issue before us. In *F&P Growers*, the employer refused to continue bargaining with the originally certified union in that case, the UFW, because allegedly "objective criteria revealed that a majority of employees in the bargaining unit no longer supported the UFW …." (*F&P Growers*, *supra*, 168 Cal.App.3d at p. 670.) The employer had argued that since the NLRA's rebuttable presumption rule had been found applicable to the ALRA, other related NLRA precedents likewise should be adopted, including the rule allowing an employer to refuse to bargain with a certified union if the employer had a good faith belief that the union had lost its majority support. (*F&P Growers*, *supra*, at pp. 672–677.) In resolving that issue,

---

[9] We note the employer's continuing duty to bargain with a certified union does prejudice the employer because, in accordance with how bargaining is defined under the ALRA, both the employer and the union retain their respective rights of contractual consent as guaranteed in section 1155.2, subdivision (a), which states that the obligation to bargain in good faith "does not compel either party to agree to a proposal or require the making of a concession."

the Court of Appeal concluded that the loss of majority support defense to bargaining with a particular union was clearly *inapplicable* to the ALRA because of important differences between the ALRA and the NLRA. (*F&P Growers*, *supra*, at pp. 674–676.) For example, the NLRA permitted an employer to bargain with a union that had demonstrated its majority status by means other than an election, but the ALRA only allowed an employer to bargain with a union that had won an election. Moreover, the NLRA permitted employers to petition for an election, but the ALRA did not allow employers to file election petitions regarding the certification or decertification of a union. (*F&P Growers*, *supra*, at pp. 674–678.) As noted in *F&P Growers*, these distinctive provisions of the ALRA indicated the Legislature did not intend for an agricultural employer to participate in deciding whether or not it shall bargain with a particular union. Such choice was left solely to the employees, and was removed from the employer. (*F&P Growers*, *supra*, at pp. 677–678.) For these reasons, the Court of Appeal held that employers could not refuse to bargain with a particular union based on a good faith belief in loss of majority status, since that would allow employers to do indirectly (i.e., effectively decertify a union) what the Legislature had removed from the employer's purview. (*Id*. at p. 677.)

In the present case, Fanucchi's assertion of abandonment as an alleged defense to its duty to bargain is clearly analogous to the loss of majority support defense that was asserted by the employer in *F&P Growers*. In both cases, the employer refused to bargain with a previously certified union based on a factual development that allegedly resulted in a defense to bargaining. As *F&P Growers* correctly held, the Legislature did not intend for an agricultural employer to participate in deciding whether or not it shall bargain with a particular union and, therefore, the employer in that case could not refuse to bargain with the certified union based on a claimed defense of loss of majority support. (See *F&P Growers*, *supra*, 168 Cal.App.3d at pp. 677–678.) In light of the similar nature of the case at bench, we believe that the same reasoning applies and the same result

14.

should follow. Thus, here, Fanucchi was not entitled to refuse to bargain with UFW based on UFW's past failings or inactivity, and such conduct did not create a defense to bargaining, whether labeled as abandonment or otherwise.

Moreover, "[a] guiding principle for evaluating the Board's decision … is that an administrative agency is entitled to strong deference when interpreting policy in its field of expertise" (*Montebello Rose Co.*, *supra*, 119 Cal.App.3d at p. 24). Based on the foregoing analysis of the present issue, it is appropriate that we defer to the Board's resolution thereof. In implementing the ALRA and its policies, the Board held in the present case (*Tri-Fanucchi Farms*, *supra*, 40 ALRB No. 4), as it has held in previous Board decisions, that past union absence or inactivity do not create an abandonment defense to the duty to bargain. In light of existing judicial construction of the ALRA as reflected in the Court of Appeal decisions noted above, the Board's position on this issue constituted a reasonable interpretation and application of the ALRA. Accordingly, the Board's decision on that discrete issue is hereby affirmed. Since Fanucchi had no valid defense to the duty to bargain, it follows that its refusal to bargain with UFW or to provide information constituted unfair labor practices, as the Board further held. We affirm these latter findings as well.

## IV.    Related Equitable Defenses

For the same reasons set forth above regarding abandonment, the related equitable defenses premised on the same underlying facts—namely, UFW's failure to bargain for 24 years—likewise did not constitute defenses to the duty to bargain under the ALRA. In substance, these equitable defenses raised by Fanucchi (i.e., laches, unclean hands, and estoppel) were merely a reiteration under different labels of the same essential claim of abandonment. We affirm the Board's conclusion that UFW's past inactivity and/or absence did not create a defense to bargaining under these alternative equitable theories.

## V.	Make Whole Relief

We now consider whether make whole relief was appropriately ordered by the Board. We begin by providing a brief description of this unique remedy. If an employer is guilty of an unlawful labor practice for refusal to bargain in good faith, the Board has discretion under the ALRA to impose a make whole remedy against the employer to compensate the employees for losses incurred as a result of the delays in the collective bargaining process. (See *J.R. Norton Co.*, *supra*, 26 Cal.3d at pp. 27, 36.) The purpose of the make whole remedy is to put the parties and the employees in the economic positions that they presumably would have been in if the employer had not unlawfully refused to bargain. (*F&P Growers*, *supra*, 168 Cal.App.3d at p. 682.)

The statutory provision of the ALRA authorizing make whole relief is section 1160.3. Section 1160.3 provides in relevant part that whenever the Board finds an employer guilty of an unfair labor practice for refusal to bargain, the Board may enter an order "requiring such person to cease and desist from such unfair labor practice, [and] to take affirmative action, including … *making employees whole, when the board deems such relief appropriate, for the loss of pay resulting from the employer's refusal to bargain*, and to provide such other relief as will effectuate the polices of this part." (Italics added.) As the wording of the statute clearly indicates, make whole relief is discretionary in nature and is to be applied only where the Board determines it is appropriate under the circumstances. (*J.R. Norton Co.*, *supra*, 26 Cal.3d at pp. 37–38; *F&P Growers*, *supra*, 168 Cal.App.3d at pp. 680–682.)

In determining whether or not such relief is appropriate, the Board must consider the facts and equities of each particular case. (*J.R. Norton Co.*, *supra*, 26 Cal.3d at pp. 37–38.) Thus, it is not permissible to impose make whole relief on a per se basis, such as by imposing it automatically whenever an employer is found to have committed an unfair labor practice by refusing to bargain. (*Ibid.*) In *F&P Growers*, the Court of Appeal explained the implications in that case of this rule against per se relief: "[E]ven

16.

though the employer may have had no right to be involved in deciding whether it would or would not bargain with [UFW], the Board was still required to examine the employer's conduct for particular facts and circumstances to see if the make whole remedy was appropriate. The fact that we now hold that the employer was required to bargain with [UFW] regardless of its good faith belief does not negate the discretionary nature of the make whole relief under the statute.… Even though that belief is no defense for failure to bargain, the language of the statute is clear that the Board issue the make whole relief only when it 'deems' the relief appropriate." (*F&P Growers*, *supra*, 168 Cal.App.3d at p. 681.)

A special type of case in which the issue of make whole relief sometimes arises is where the employer has made a "'technical' refusal to bargain" as a means of obtaining judicial review of the validity of a representation election. (*J.R. Norton Co.*, *supra*, 26 Cal.3d at p. 27.) In *J.R. Norton Co.*, the Supreme Court considered the issue of make whole relief in the context of such a technical refusal to bargain. (*Id.* at pp. 27–40.) The court observed that the technical refusal to bargain procedure is necessary because election certification decisions by the Board are not subject to direct judicial review (*id.* at p. 27), and it is important to provide a check on arbitrary action by the Board in regard to representation elections (*id.* at p. 30). The court then discussed the standard to be applied by the Board regarding make whole relief in such cases. In particular, the court held that where an employer engages in a technical refusal to bargain but ultimately loses the election challenge after obtaining judicial review, the Board is required to evaluate whether to impose make whole relief under the following standard: "[T]he Board must determine from the totality of the employer's conduct whether it went through the motions of contesting the election results as an elaborate pretense to avoid bargaining or whether it litigated in a reasonable good faith belief that the union would not have been freely selected by the employees as their bargaining representative had the election been properly conducted. We emphasize that this holding does not imply that whenever the

17.

Board finds an employer has failed to present a prima facie case, and the finding is subsequently upheld by the courts, the Board may order make-whole relief. Such decision by hind-sight would impermissibly deter judicial review of close cases that raise important issues concerning whether the election was conducted in a manner that truly protected the employees' right of free choice." (*Id*. at p. 39.)[10]

In the case before us, contrary to Fanucchi's characterization of its actions, the refusal to bargain was not technical (in the *J.R. Norton Co.* sense) because the validity of the representation election and original certification of UFW based on that election were not at issue.

Where, as here, the employer's refusal to bargain was not technical, *F&P Growers*, provides an instructive analysis of the Board's generally followed approach to the issue of make whole relief in such cases.[11] In *F&P Growers*, the Board had adopted a particular standard for deciding on whether make whole relief was appropriate. That standard was as follows: "[W]e consider on a case-by-case basis the extent to which the public interest in the employer's position weighs against the harm done to the employees by its refusal to bargain. Unless litigation of the employer's position furthers the policies and purposes of the [ALRA], the employer, not the employees, should ultimately bear the financial risk of its choice to litigate rather than bargain." (*F&P Growers*, *supra*, at p. 682.) The Court of Appeal held that the above standard was a proper method for the Board to use in determining whether make whole relief was appropriate: "The Board

---

**10** In *J.R. Norton Co.*, the Supreme Court concluded its discussion of make whole relief with the following words: "In short, a per se remedy is impermissible in this setting. Not only are there degrees of violations [citation] but, more fundamentally, other factors peculiar to labor relations may outweigh the appropriateness of make-whole relief in particular cases. [Citation.] The Board's remedial powers do not exist simply to reallocate monetary loss to whomever it considers to be most deserving; they exist, as appears from the statute itself, to effectuate the policies of the [ALRA]." (*J.R. Norton Co.*, *supra*, 26 Cal.3d at pp. 39–40.)

**11** The court in *F&P Growers* expressly acknowledged that "the case before us does not involve a 'technical refusal' to bargain …." (*F&P Growers*, *supra*, 168 Cal.App.3d at p. 681.)

18.

used its own standards in determining appropriateness of the remedy in this particular case, and this they were entitled to do." (*Id*. at p. 682.) Nevertheless, in applying that standard as a framework for determining the appropriateness of the remedy, the Board still must reach its decision in a discretionary (not a per se) manner based on the facts and equities of the particular case. As the Court of Appeal stated: "Since the Board in the instant case did in fact examine the facts and circumstances of the particular case, and did not apply the make whole remedy per se or automatically, but applied it only after it exercised discretion and deemed that relief appropriate, the order herein was not an abuse of discretion.… [¶] The language of the Board's decision shows that they knew they had to examine each case individually, and the language of their decision indicates that they examined the case on a case-by-case basis." (*Ibid*.)

Here, the Board explicitly followed the standard that was approved in *F&P Growers*. The Board's written decision stated as follows: "Here, because [Fanucchi] is not seeking review of a certification election, *F&P Growers* applies, rather than *J.R. Norton*. The issue, therefore, is whether the public interest in [Fanucchi's] position outweighs the harm done to employees by its refusal to bargain. The position taken by [Fanucchi] is based principally on its contention the UFW forfeited its certification by abandoning the bargaining unit. As discussed above, this position is contrary to over 30 years of Board precedent holding that abandonment is not a defense to the duty to bargain. Accordingly, [Fanucchi's] position cannot be said to further the policies and purposes of the ALRA. [Citation.] [¶] … [¶] Based upon our review of the facts and circumstances and the equities of this case, we conclude, in agreement with the ALJ, that an award of makewhole is appropriate and that, under the circumstances presented in this case, '[Fanucchi], not the employees, should ultimately bear the financial risk of [Fanucchi's] choice to litigate rather than bargain.' [Citation.]" (*Tri-Fanucchi Farms*, *supra*, 40 ALRB No. 4, pp. 18, 20, fns. omitted.)

19.

It is clear that the Board's decision to impose make whole relief was based solely on its legal evaluation or value judgment that Fanucchi's litigation of the abandonment issue herein—which was premised on UFW's 24 years of inactivity—did not further the policies and purposes of the ALRA. With all due deference to the Board regarding ALRA policy issues, we believe the Board was clearly wrong in its legal conclusion that Fanucchi's litigation efforts in this matter did not further the purposes and policies of the ALRA, as we now explain.

Although it is true that the Board's prior decisions stated that even "a prolonged period" of union absence or inactivity did not create an abandonment defense to the employer's duty to bargain (e.g., *San Joaquin Tomato Growers, Inc.*, *supra*, 37 ALRB No. 5, p. 4; *Pictsweet Mushroom Farms*, *supra*, 29 ARLB No. 3, p. 14), no appellate court has (or had) decided that specific issue until, in this case, Fanucchi sought and obtained judicial review. Ultimately, it is the courts that must ascertain the intent of a statute so as to effectuate the purpose of the law. (*J.R. Norton Co.*, *supra*, 26 Cal.3d at p. 29; *Bodinson Mfg. Co. v. California E. Com.*, *supra*, 17 Cal.2d at p. 326 [the courts state the meaning of a statute finally and conclusively].) Moreover, notwithstanding the Board's prior decisions, we believe the question of how an appellate court would actually rule when confronted with the novel situation of such *long-term* union absence or *egregious* inactivity (i.e., 24 years) as alleged here was far from certain.[12] Additionally, the question of UFW abandonment (or apparent abandonment) of bargaining units is not an isolated incident limited to the present case, but apparently has been a recurring problem, as reflected by the Board's own cases and the cases before this court in which

---

[12] As noted by Fanucchi, neither the Board nor the courts would be unconcerned that a union has apparently disregarded its statutory responsibilities to a bargaining unit for over two decades, as occurred here. It was not unreasonable to raise the issue of abandonment here, since such extreme dereliction would seem to be antithetical to the ALRA policies of having actual employee representation by the elected union and of promoting the collective bargaining relationship. (See, e.g., §§ 1140.2, 1152, & 1155.2, subd. (a).)

20.

the issue has been raised. For all of these reasons, and despite the Board's prior attempts to summarily dispose of the issue, the question has remained to a significant degree unsettled and controversial. Against this larger backdrop, it is clear to us that judicial review of the issue was reasonably necessary and helpful to all parties concerned, including both unions and agricultural employers, for the beneficial purpose of clarifying and/or confirming the law. Therefore, Fanucchi's advancement of this litigation plainly furthered the broader purposes of the ALRA to promote greater stability in labor relations by obtaining an appellate decision on this important issue. Accordingly, we conclude that the Board prejudicially erred when it ordered make whole relief in this case, and that portion of the Board's order is hereby reversed.

## VI.   Other Issues Need Not Be Reached

In view of the fact that we have decided, as a matter of law, the question of the nonavailability of Fanucchi's abandonment-related defenses to the duty to bargain, and that we have further concluded, as a matter of law, that make whole relief was improper in this case, we find it unnecessary to address Fanucchi's remaining contentions. Those remaining contentions, largely dealing with procedural and due process issues would not—even if correct—change our disposition of the principal legal issues as indicated above or otherwise require a different outcome. We therefore do not reach those additional matters.

## DISPOSITION

The portion of the Board's decision in *Tri-Fanucchi Farms*, *supra*, 40 ALRB No. 4, which imposed make whole relief against Fanucchi is reversed. The balance of the Board's decision is affirmed. Each party to bear its own costs.

_____
KANE, J.

WE CONCUR:


_____
HILL, P.J.


_____
LEVY, J.